In re Kenneth CUPP, Debtor.

**WAPAKONETA PRODUCTION CREDIT, Plaintiff,**

v.

**Kenneth W. CUPP, et al., Defendants.**

**Bankruptcy No. 83–0787.
Related Case 83–01661.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

April 19, 1984.

Jery M. Johnson, Lima, Ohio, for plaintiff.

Michael J. Leatherman, Findlay, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before this Court upon the Complaint to Enjoin the Debtors filed by the Wapakoneta Production Credit Association. It has been agreed between the parties that the merits of the Complaint address primarily issues of law, and that an adjudication of those issues may be reached based upon the submission of written arguments of counsel as well as any exhibits attached thereto. Pursuant to that agreement, the parties have filed their briefs and have had the opportunity to respond to the arguments made by opposing counsel. Having reviewed the record and the arguments set forth by counsel, the Court finds that for the following reasons the Complaint should be granted.

## FACTS

The facts which give rise to this Complaint do not appear to be in dispute. The Debtor-In-Possession is a farmer whose operations include the growing of certain

crops. Beginning at sometime in 1978, the Debtor-In-Possession began borrowing money from the Plaintiff in order to finance the expenses of his business. In return for these loans the Debtor-In-Possession gave a security interest in property which is described, in relevant part, by the security agreement as:

"(3) ... All crops ... All harvested and stored crops ... (7) All property similar to that listed above, which at any time may hereafter be acquired by the Debtor including but not limited to ... all products of crops ... (8) All proceeds of the sale or other disposition of any of the property described or referred to under Items 3 to 7, inclusive above, and of any ... contracts rights derived from said property, together with all accounts receivable resulting from such sales ..."

On January 27, 1983, the Plaintiff filed a foreclosure action which was predicated upon the security agreement and the promissory notes executed by the Debtor-In-Possession. A judgment was entered in that case on May 23, 1983.

On March 2, 1983, prior to the date of the foreclosure judgment, the Debtor-In-Possession initiated his participation in the Payment-In-Kind Program (hereinafter referred to as PIK). The terms of this program provide that the federal government would give participating farmers a quantity of grain in return for their abstention from growing any additional crops. The allotment of grain to any participant was based upon that farmer's production average in previous years and the amount of grain that was agreed not to be produced in the present year. In the case at hand, the Debtor-In-Possession was scheduled to receive under this program 1,242 bushels of wheat and 10,404 bushels of corn.

On June 29, 1983, the Debtor-In-Possession executed an assignment of the PIK proceeds from himself to the Big Oak Farms, a partnership in which he, his wife, and his mother are partners. On September 20, 1983, the Debtor-In-Possession filed his voluntary Chapter 11 Petition with this Court. The adversary Complaint was filed by the Plaintiff on October 13, 1983, where-in the Plaintiff sought to enjoin the Debtor-In-Possession from disposing of the PIK proceeds which became available to the Debtor-In-Possession on October 15, 1983. In an Order which was approved by all of the parties, this Court enjoined the Debtor-In-Possession from effectuating his assignment of the PIK payments pending a determination on the merits of this Complaint. An exception was made so as to allow the Debtor-In-Possession to use the grain to the extent necessary to feed certain cattle. However, the Debtor-In-Possession was required to post a bond for the value of the grain taken. The issue presently before the Court is whether or not the Debtor-In-Possession's entitlements under the PIK program are collateral within the scope of the security agreement which exists between the parties.

## LAW

The effect of a security agreement which includes proceeds of the collateral is addressed by 11 U.S.C. § 552(b) which reads:

"... if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law ..."

Inasmuch as this section preserves the Plaintiff's security interest in any proceeds of collateral that is exchanged subsequent to the filing of a bankruptcy petition, it must be determined whether or not the PIK payments are "proceeds" with the contemplation of the security agreement.

Ohio Revised Code § 1309.25 states in pertinent part that:

" 'Proceeds' " includes whatever is received upon the sale, exchange, collec-

tion, or other disposition of collateral or proceeds ..."

The apparent import of this provision is to allow the term "proceeds" to encompass that which is received from the disposition of collateral, regardless as to the method of disposition or the nature of what is received. *See for example, Corwin v. RCA Corp. (In re Kittyhawk Television Corp.)*, 383 F.Supp. 691 (S.D.Ohio 1974), *aff'd*, 516 F.2d 24 (6th Cir.1975). Although it cannot be directly used for construing the term "proceeds", Section 552(b) of the Bankruptcy Code elaborates on the breadth of the term's application as it may be used in state law. Therefore, in view of the policy expressed by the Ohio statute and as retained by the Bankruptcy Code, "proceeds" must be given a liberal interpretation.

In addition to the consideration which must be given to the term "proceeds" it is also important to note that a security agreement is a contract between two or more parties to assure the performance of an obligation undertaken by one of the parties. 48 Ohio Jur.2d *Secured Transactions* § 1. As a matter of contract law, security agreements are merely evidence of the intentions of the contracting parties. *Matter of Dayton Suzuki, Inc.*, 27 B.R. 915 (Bkrtcy.S.D.Ohio 1983). When a contract does not address all issues that arise within the operation of the agreement, the intent of the contracting parties, to the extent it can be ascertained from the existing document, is the factor which must be applied in arbitrating any dispute. *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). When determining the intent of the parties, the Court must consider the contract in the context of its apparent purpose, the circumstance surrounding its execution, and the equities of the contended matter. *See, Charthouse, Inc. v. Maxwell (In re Maxwell)*, 30 B.R. 982 (Bkrtcy.N.D.Ill.1983).

In *Matter of Munger*, 495 F.2d 511 (9th Cir.1974), the Court found that governmental payments to the debtor for having abandoned a portion of his growing crops were proceeds within the meaning of a creditor's security agreement. The Court reasoned that since the security agreement was made with an awareness of the availability of federal subsidies, a distinction of form over substance as to the payments would be contrary to what the parties had intended at the time the agreement was made. Similarly, in *First State Bank of Abernathy v. Holder (In re Nivens)*, 22 B.R. 287 (Bkrtcy.N.D.Tex.1982), the Court held that certain "disaster" subsidy payments were substitutes for unuseable crops, and therefore, proceeds within the contemplation of the security agreement. Relying upon these precedents, two Courts have specifically held that payments under the recently established PIK program are proceeds for purposes of security agreements that retain a lien on the proceeds of crop sales. *See, In re Preisser*, 33 B.R. 65 (Bkrtcy.D.Col.1983), *In re Lee*, 11 B.C.D. 337, 35 B.R. 663 (Bkrtcy.N.D.Ohio 1983). In these decisions, the Courts have found that since PIK proceeds are merely substitutes for what the debtor would have grown had the program not come into existence, they are the proceeds of the debtor's business.

This Court is in agreement with the prior decisions and their underlying reasoning. The PIK program was initiated to promote certain federal policies. In pursuit of those policies, the program was designed to compensate farmers for not producing crops which they otherwise would have raised. In that respect, the participants are receiving the products of their business without having to actually perform the work. Since the term "proceeds" is intended to apply to that which is produced from a creditor's collateral which, in the absence of the PIK program, would have been grown, it must also apply to that which is produced as though it had been grown. Therefore, it would follow that PIK proceeds are proceeds of the crops within the meaning of the security agreement.

The conclusion just reached is supported by the application of contract law principles to the security agreement in question. As previously stated, the intent of the parties is the controlling factor whenever a dispute arises over whether or

not a contract governs a subsequent circumstance. *Skivolocki v. East Ohio Gas Co.*, supra. A review of the agreement finds that it did not address the question of whether or not government subsidies would be considered as collateral. However, it is also apparent that the contract was a comprehensive agreement which appears to convey a security interest in all revenues that were produced from the Debtor-In-Possession's land. In view of the all-inclusive character of the agreement, it must be concluded that the contract expresses the intent that the Plaintiff was to acquire a security interest in whatever recompense the Debtor-In-Possession received as a farmer, regardless of whether it was for having raised crops or for participating in a government subsidy program. Accordingly, PIK proceeds would be included within the Plaintiff's security interest.

It should also be noted that as in *Matter of Munger*, supra, the security agreement was made with the awareness that a variety of government subsidies are available to compensate a farmer for having not produced crops in any given year. The comprehensive language of the agreement must be read in the context of that awareness, despite the fact that the specific program in which the Debtor-In-Possession participated was not in existence at the time the agreement was executed. It should also be noted that if this Court were to hold that PIK proceeds are not "proceeds", an artificial distinction would be created between proceeds from the sale of crops actually grown and the proceeds received as though they had been grown. It would also create an unconscionable means by which a farmer could defeat a creditor's security. If PIK payments were not proceeds, a farmer could abandon all farming activities in favor of program participation, thereby allowing him to dissipate the proceeds of the programs without any regard for their creditor's interests. Such a result cannot be permitted.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Debtor-In-Possession's entitlements under the Payment-In-Kind program be, and are hereby, held to be collateral within the terms of the security agreement between the parties.

It is FURTHER ORDERED that pursuant to the Order of this Court dated December 1, 1983, the bond posted by the Debtor-In-Possession for those PIK proceeds used to feed cattle be made payable to the Plaintiff within five (5) days from the date of this Order.