**David APPLE, et al., Plaintiffs,**

v.

**MIAMI VALLEY PRODUCTION CREDIT ASSOCIATION, et al., Defendants.**

**No. C–3–84–516.**

United States District Court, S.D. Ohio, W.D.

May 21, 1985.

Charles W. Ewing, Columbus, Ohio, for plaintiffs.

Roger F. Carroll, Columbus, Ohio, for defendant Continental Grain Co.

John R. Butz, Springfield, Ohio, for defendant Miami Valley Production Credit.

### DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT IN THEIR ENTIRETY; TERMINATION ENTRY

RICE, District Judge.

This case comes before the Court for resolution of the Motions for Summary Judgment filed by Defendant Miami Valley Production Credit Association (PCA) (Doc. # 15) and Defendant Continental Grain (Continental) (Doc. # 14).

The facts reveal that Defendant PCA is a federally-created cooperative association which extends credit to member-farmers such as Plaintiffs David and Betty Lou Apple. Defendant PCA made its first loan to Plaintiffs in 1977, and requested in exchange that Plaintiffs execute a financing statement and Security Agreement. These were filed in Miami County on November 14, 1977. Plaintiffs obtained another loan from PCA in 1978, twenty percent of which went for capital improvements, and the bulk of which was a refinancing of the 1977 loan. A continuation of the existing financing statement was filed on October 19, 1982.

In March, 1983, Plaintiffs executed a contract to participate in the federal government's Payment in Kind (PIK) program. Under this PIK agreement, the federal government agreed to provide Plaintiffs with 9,569 bushels of corn in exchange for Plaintiff's promise not to raise any corn on their land in 1983. Plaintiffs subsequently contracted to sell their PIK corn entitlement, slated for shipment in October, 1983, to Defendant Continental Grain. In mid-1983, Defendant PCA called in Plaintiffs' loan, and, on July 12, 1983, filed an action in state court seeking a money judgment and foreclosure of Plaintiffs' real estate. Plaintiffs filed their petition in bankruptcy on June 1, 1984, pursuant to Chapter 11 of the U.S. Bankruptcy Code. They filed their Complaint in the instant action on June 5, 1984 (Doc. # 1).

### I. *Defendant PCA's Motion for Summary Judgment on Count I.*

Citing the "unique relationship" of Defendant PCA to its member farmers,

Plaintiffs allege in Count I that Defendant PCA violated its fiduciary duty to them when it refused to extend additional credit to Plaintiffs in 1981 and in subsequent years. Plaintiffs cite the Farm Credit Act of 1971, 12 U.S.C. § 2001 *et seq.*, as the source of Defendant's duty to them as well as the source of their remedy in this Court. Defendant PCA contends in its Motion for Summary Judgment that no private right of action exists under this latter statute.[1] This Court is inclined to agree.

No provision within the Farm Credit Act directly creates a private remedy for those aggrieved by a violation of the Act. The Court thus must consider the four factors which the Supreme Court has set forth to assist the lower courts in determining whether a federal statute impliedly confers a private right of action, namely:

(1) Whether the Plaintiffs are members of the class for whose especial benefit the statute was enacted;

(2) Whether the legislative history either explicitly or implicitly reveals an intent to create or deny a private cause of action;

(3) Whether the implication of a private remedy would be consistent with the legislative scheme; and

(4) Whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Marx v. Centran Corp.*, 747 F.2d 1536, 1544 (6th Cir.1984) (citing *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)); *Howard v. Pierce*, 738 F.2d 722, 724 (6th Cir.1984). Apparently, no one factor in this analysis is to be considered paramount. *Howard*, 738 F.2d at 724 n. 4.

With respect to the first of the factors enumerated *supra*, the Court notes that the purpose of the Act, as stated in 12 U.S.C. § 2001(a), was to improve "the income and well-being of American farmers and ranchers by furnishing sound, adequate and constructive credit." The Act pursued this goal by creating instrumentalities such as production credit associations from which American farmers and enumerated others could obtain credit. Arguably, then, Plaintiffs might be said to be within the class for whose benefit the statute was enacted, in that the Act was aimed to assist farmers in need of credit.

Scrutiny of the legislative history of the Act, while it contains some seeds of uncertainty, persuades this Court that Congress did not intend for the Act to confer the type of private right of action sought by Plaintiffs herein. As originally enacted, the Act prohibited production credit associations, with a few limited exceptions, from being able to sue or be sued in federal district court. 12 U.S.C. § 2258 (1971). This provision of the Act was deleted in 1975. The Senate Report accompanying this amendment of the Act explained:

> The provision in the Act which states that the district courts of the United States shall not have jurisdiction (except in certain limited situations) of any suit by or against a production credit association presents substantial difficulties in enforcing a lien of a preferred ship mortgage and serves as an impediment to financing fishermen.
>
> The amendment of the Act to permit production credit associations access to the Federal district courts will provide a mechanism by which the associations themselves can enforce a lien on ships if the need arises. The ability of a produc-

---

1. In Plaintiffs' Memorandum *Contra* Defendant PCA's Motion for Summary Judgment (Doc. #20), Plaintiffs contend that they do not in any way assert a private cause of action under the Farm Credit Act, but merely seek relief for the alleged unconstitutional deprivation of property. Count I of Plaintiffs' Complaint, however, which clearly puts forward the Farm Credit Act as a vehicle for relief, has not been the subject of a Motion to Amend by Plaintiffs, deleting said Count, or of a stipulation voluntarily dismissing Count I. In the absence of same, the Court cannot but rule on Defendant PCA's Motion for Summary Judgment as to Count I.

Plaintiffs' Memorandum *Contra* also contained a request for an oral hearing on Defendants' Motions for Summary Judgment. This request is denied.

tion credit association to take an enforceable lien on a fishing vessel, just as it now can on a farmer's property, equipment, or livestock, will make credit service more readily available to producers and harvesters of aquatic products.

Sen.Rpt. No. 94–554, *reprinted in* 1975 Cong.Code & Adm.News 2148, 2150 (1975). Senate Report No. 94–554 also noted that adoption of the 1975 amendment to 12 U.S.C. § 2258 would give production credit associations the same access to federal courts enjoyed by private citizens and other corporations. *Id.*

The Report provides no further explanations as to any implications which such federal court access might have with respect to private enforcement under the Act. While letters from the Department of Agriculture and from the Farm Credit Administration, all in support of the 1975 amendment of the Act, are included in the published legislative history, they, too, focus primarily on the need for fishing vessel liens as the motivating rationale for the amendment. In a letter of support, however, Governor Harding of the Farm Credit Association also noted rather opaquely that "[t]he proposal, if enacted into law, will permit persons and other entities to pursue their claims against production credit associations in Federal district courts, if jurisdictional elements are present, the same as if the defendant were not the PCA." *Id.* at 2155. Governor Harding's allusion to "jurisdictional elements" could conceivably have referred to the necessity of complete diversity in any suit brought against PCA, thus negating the position that the Farm Credit Act itself created a federal enforcement mechanism. Said phrase could also, however, be construed as a reference to the $10,000 amount in controversy still required at that time in "federal question" cases. Governor Harding's statement also reflected his perspective that the claims which would be brought by potential plaintiffs against PCAs upon the deletion of federal court bar would be indistinguishable from the claims which could be brought by the same plaintiffs against other defendants in federal court. This apparent view of a PCA as simply another potential defendant in federal court would undermine, or at least fail to support, the notion that the 1975 amendment signalled an intent for the Farm Credit Act to serve as a source of a unique set of federal duties and obligations to be enforced under the Act by a member against his or her PCA.

The third consideration for this Court is whether the implication of a private remedy would be consistent with the legislative scheme which Congress designed to implement its purpose of facilitating the extension of credit to farmers. The Court notes the authority given to the Farm Credit Association, pursuant to 12 U.S.C. § 2252, to promulgate rules and regulations to carry out the Act. At the same time, under 12 U.S.C. § 2258, a production credit association is considered a citizen of the state in which its principal office is located, and thus is subject to that state's laws. As stated by the Eighth Circuit in rejecting the argument that federal common law, rather than state law, was necessary to effectuate the Act's purpose: "Even if the fiduciary law varies from state to state, no burden to the [Farm Credit] system is perceived...." *Boyster v. Roden,* 628 F.2d 1121, 1125 (8th Cir.1980).

Inquiry into the fourth and final factor in this case carries along the theme of the third factor *supra.* Breach of fiduciary duty is a traditional area of state concern. As such, it is inappropriate to infer a cause of action based solely on federal law. While this Court is not at all indifferent to the allegations lodged by Plaintiffs, they have an adequate remedy, governed by the four-year statute of limitations set forth in Ohio Rev.Code § 2305.09, for breach of a fiduciary duty in state court.

Analysis of the four relevant criteria persuades this Court that no federal cause of action should be implied in this case under the Federal Credit Act. *Accord Hartman v. Farmers Prod. Credit Ass'n of Scotsburg,* No. NA 81–163–C (S.D.Ind.1983). Summary judgment is thus entered in favor of Defendant PCA and against Plain-

tiffs. In light of this ruling, the Court does not consider the merits of Plaintiffs' breach of fiduciary duty allegations.

II. *Defendants' Motions for Summary Judgment on Counts II and III.*

■ As noted *supra,* Defendant Continental purchased Plaintiffs' PIK corn entitlement. It paid Plaintiffs roughly $28,-000.00 for said corn in October, 1983, by means of four checks. Counts II and III of Plaintiffs' Complaint focus upon their dissatisfaction at Defendant Continental's insistence upon making these four drafts payable jointly to Plaintiffs and Defendant PCA.

Defendant Continental's refusal to issue the checks payable solely to Plaintiffs, and Defendant PCA's refusal to endorse the joint checks over to Plaintiffs, stemmed from their belief that Plaintiffs' PIK entitlements were subject to the outstanding security interest of Defendant PCA. The security agreement and extension filed by PCA provided that, in addition to the crops, equipment and livestock specifically listed in the agreement, "all proceeds of the sale or other disposition by the Plaintiffs of any of the enumerated items were also subject to the agreement." (Doc. # 14, Exh. 2). Plaintiffs argue that PIK entitlements are not within Ohio Rev.Code § 1309.25(A)'s definition of "proceeds" [2] and that, as such, Defendants violated the fifth amendment's proscription of deprivations of property without due process in their handling of the PIK payment checks. Both Defendants have moved for summary judgment on this issue.

Only if Plaintiffs satisfy the threshhold requirement of showing that they were deprived of a constitutionally protected property interest can this Court determine whether they were afforded sufficient procedural protection. *Yashon v. Hunt,* 696 F.2d 468, 469 (6th Cir.1983). This Court cannot accept Plaintiffs' contention that Defendants deprived them of their property with respect to the joint payee payment checks. Instead the Court finds persuasive authority to the effect that Plaintiffs' PIK entitlements were subject to a valid security interest held by PCA.

A number of bankruptcy courts have had cause to consider whether PIK entitlements are "proceeds" of crop collateral which allow the holder of a valid security interest to validly assert a lien on such entitlements. The *In Re Cupp* decision, 38 B.R. 953 (Bankr.N.D.Ohio 1984), involved a security agreement nearly identical to that filed by Defendant PCA herein. As in the instant case, the debtor in *Cupp* initiated his participation in the PIK program prior to the filing of a foreclosure action by his production credit association. His filing in bankruptcy then ensued. The bankruptcy court was then faced with the issue of whether PIK payments were "proceeds" under Ohio Rev.Code § 1309.25(A) in order to determine whether the security interest included said payments. The court reasoned as follows in reaching the conclusion that the payments were to be considered "proceeds:"

> The PIK program was initiated to promote certain federal policies. In pursuit of these policies, the program was designed to compensate farmers for not producing crops which they otherwise would have raised. In that respect, the participants are receiving the products of their business without having to actually perform the work. Since the term "proceeds" is intended to apply to that which is produced from a creditor's collateral which, in the absence of the PIK program, would have been grown, it must also apply to that which is produced as though it had been grown. Therefore, it would follow that PIK proceeds are proceeds of the crops within the meaning of the security agreement. 38 B.R. at 955.

Numerous other decisions have echoed the *Cupp* rationale, namely, that a determination that PIK payments are not "proceeds" creates an artificial distinction which would allow a farmer to unconscion-

---

**2.** Ohio Rev.Code § 1309.25(A) provides that "'[p]roceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds."

ably defeat a creditor's security interest. *See, e.g., In Re Lee,* 35 B.R. 663 (Bankr.N. D.Ohio 1983); *Matter of Munger,* 495 F.2d 511 (9th Cir.1974). Although the context in which this issue is presented in the instant case varies somewhat from these cited decisions, the Court is persuaded by the reasoning and policy rationales expressed in said decisions as to the liberal construction to be given to the definition of "proceeds" in the security agreement filed by PCA. Plaintiffs argue that PIK payments are "general intangibles," citing *In Re Sunberg,* 35 B.R. 777 (Bankr.S.D.Iowa 1983), *aff'd,* 729 F.2d 561 (8th Cir.1984). The Court notes that the *Sunberg* courts so defined PIK entitlements in order that payments made pursuant to the PIK program be found within the scope of a PCA security agreement which covered afteracquired "general intangibles." As observed by the *Sunberg* bankruptcy court:

> The very breadth of the omnibus clause of the security agreement is indicative of an intent to include all of the Debtors' farm property interests. There are two economic features that have dominated modern farming, the farm credit system as a lender and government sponsored farm subsidies in one form or another. The PCA is a part of the farm credit system and the debtors [are] farmers. Both would have to be conscious of the impact of the various farm programs in existence or that might come into existence on the farmer borrower's ability to meet his financial obligations. In the absence of any evidence to the contrary, the court must conclude that the omnibus clause in the parties' security agreement was intended to cover possible future property interests arising from the government's farm programs and in the last instance, PIK, the government's largess.

35 B.R. at 781.[3]

In determining that PCA herein had a valid security interest in Plaintiffs' PIK proceeds, the Court must also conclude that Defendant Continental did not act improperly in issuing checks for Plaintiffs' PIK entitlements payable jointly to Plaintiffs and PCA. As Plaintiffs' claim under the fifth amendment turns on the alleged impropriety of the joint payee checks, the Court finds that no genuine issues as to any material fact exists, and that a judgment for Defendants may be entered on Counts II and III of Plaintiffs' Complaint as a matter of law.

In light of the above rulings, this case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**3.** The Court also believes it unlikely that 7 C.F.R. 770.6(f) (1983) was intended to affect the lien rights of creditors of farmers participating in the PIK program. Moreover, under *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Court does not believe that said regulation, even were it so intended, could be retroactively applied so as to destroy lien rights acquired by creditors prior to the regulation.