**David C. APPLE and Betty Lou Apple, Plaintiffs-Appellants,**

v.

**MIAMI VALLEY PRODUCTION CREDIT ASSOC. and Continental Grain Co., Defendants-Appellees.**

No. 85–3459.

United States Court of Appeals, Sixth Circuit.

Submitted April 4, 1986.

Decided Oct. 30, 1986.

Charles W. Ewing, Columbus, Ohio, Carla I. Struble, for plaintiffs-appellants.

Roger F. Carroll, Columbus, Ohio, John R. Butz, Springfield, Ohio, for defendants-appellees.

Before KEITH, NELSON and BOGGS, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a summary judgment in which the district court held, among other things, that a security interest in certain farm assets extended to an entitlement under the United States Department of Agriculture's Payment in Kind (PIK) program. The appeal has been voluntarily dismissed as to one of the two appellees, and we shall affirm the judgment as to the other.

## I

The appellants, Mr. and Mrs. Apple, operated a farm on which they fed cattle and hogs with corn and other fodder grown on the farm. In 1977 they began borrowing money from the Miami Valley Production Credit Association, a federally chartered instrumentality of the United States empowered to make contracts and to sue and be sued. See 12 U.S.C. §§ 2091 and 2093.

To secure the loans, the Association had the Apples sign a Uniform Commercial Code financing statement and security agreement covering, among other things, "all" of the Apples' "interest" in property identified in handwritten entries made under several different printed headings. Two such entries are relevant here: "All crops including but not limited to all crops of corn, wheat and soybeans" (the entry for Item 3, captioned "Crops"), and "All corn, wheat and soybeans; all cattle; all hogs" (the entry for Item 6, captioned "Livestock, Farm Products and Personal Property").

Item 6 was followed by two printed paragraphs reading as follows:

"7 All property similar to that listed above, which at any time may hereafter be acquired by the Debtor(s) including, but not limited to, all offspring of livestock, additions and replacements of livestock and poultry, and replacements of and additions to equipment and other personal property above described; and all products of crops, livestock and poultry, and all feed to be used in fattening or maintaining said livestock and poultry.

8 All proceeds of the sale or other disposition of any of the property described or referred to under Items 3 to 7, inclusive above, and of any offspring, wool, milk, poultry products and contract rights derived from said property, together with all accounts receivable resulting from such sales."

Item 10 of the printed form said that "[a]ll of the above described crops and fixtures are or will become located on the [Apples'] farm land...."

The financing statement was properly filed in 1977, and a continuation of the financing statement was filed in October of 1982.

In 1983 the Apples signed a contract to participate in the federal government's PIK program. The contract obligated the Apples to plant no corn and obligated the government to provide the Apples 9,569 bushels of government surplus corn. After signing the contract the Apples sold their PIK entitlement—the right to receive the 9,569 bushels of corn—to appellee Continental Grain Co., a private company.

Before making payment to the Apples, Continental checked the courthouse records, learned of the financing statement, and contacted the Association. The Association said it had a security interest in the Apples' PIK entitlement, and Continental was instructed to issue its payment checks to the Association and the Apples jointly. Continental did so, and the Association refused to endorse the checks for the

Apples until their indebtedness was extinguished.

The Apples thereupon brought an action in federal district court against the Association and Continental. Count one of the complaint alleged that the Association had wrongfully refused to advance funds for the purchase of livestock. Count two set forth a claim for damages resulting from Continental's refusal to issue checks payable solely to the Apples and from the Association's refusal to endorse the checks payable jointly. Count three alleged that the Association and Continental had taken the Apples' property without due process of law in violation of the Fifth Amendment.

Both defendants moved for summary judgment, and the district court granted the motions and dismissed the action. 614 F.Supp. 119. The Apples appealed, but subsequently entered into a settlement agreement with the Association pursuant to which the appeal was dismissed as to the Association only. The appeal as to Continental remains to be disposed of.

## II

■ The dismissal of the appeal as to the Association raises the threshold question whether this court retains jurisdiction to decide the merits of the remainder of the appeal. We answer that question in the affirmative. Whether or not there was diversity of citizenship, the district court was empowered to decide the state law claim against Continental under the pendent jurisdiction doctrine. The court may retain jurisdiction, under the doctrine of ancillary jurisdiction, after the dismissal of the appeal as to the Association. *Edwards v. Sharkey*, 747 F.2d 684, 686 n. 3 (11th Cir. 1984).

## III

As to the merits of the Apples' claim against Continental, the district court held, following the rationale of *In Re Cupp*, 38 B.R. 953 (Bkrtcy.N.D.Ohio 1984), that the "proceeds" in which the Association had a valid security interest included the money to which the Apples were entitled by rea-

son of the sale of their PIK entitlement; therefore, the court concluded, Continental did not act improperly in making the Association a joint payee on the checks issued in payment for the entitlement.

Citing *In Re Sunberg*, 35 B.R. 777 (Bkrtcy.S.D.Iowa 1983), *aff'd*, 729 F.2d 561 (8th Cir.1984), and *In Re Kruse*, 35 B.R. 958 (Bkrtcy.D.Kan.1983), the Apples contend that the Association had no security interest in the proceeds of the PIK entitlement; PIK payments are "general intangibles," they maintain, and not proceeds from the sale of crops. "There could be no proceeds," the Apples contend, "if there were no crops."

■ We do not consider it necessary to decide whether proceeds of the sale of PIK entitlements should be treated as proceeds of the sale of "crops," or whether, under Item 7 of the financing statement, benefits accruing from a phantom crop are subject to the security agreement as property "similar" to that listed in Item 3 of the financing statement. The Apples seem to have overlooked the fact that their financing statement covered more than the home-grown crops listed in Item 3 and proceeds realized on the sale of such crops. The Association's security interest also extended to "all" of the Apples' "interest" in the "Farm Products" described in Item 6—"All corn, wheat and soybeans"—whether or not located on the Apples' farm and whether or not grown there. (Item 10 of the financing statement, which says that certain security is or will be located on the farm, relates only to "crops" described in Item 3 and "fixtures" described in Item 5, and not to "farm products" described in Item 6.) The Apples had a contractual interest in 9,569 bushels of government surplus corn, and the express terms of Items 6 and 8 of the financing statement gave the Association a security interest in that contractual right.

We find nothing to the contrary in *Matter of Schmaling*, 783 F.2d 680 (7th Cir. 1986), where the Court of Appeals for the Seventh Circuit held that a security agree-

ment covering "crops grown or growing" on the borrower's farm did not extend to corn received under the PIK program. We would have had to decide a similar question if Item 6 of the Apples' financing statement had been left blank and the Association's security interest had been limited to "crops" located or to be located on the Apples' farm land and subsequently acquired property "similar" to such crops and their proceeds; Item 6 having been filled in, however, we express no opinion on whether, if it had not been, we would have reached the same result as the *Schmaling* court.

The judgment of the district court in favor of Continental is AFFIRMED.