The BANK OF NORTH
ARKANSAS, Appellant,
v.

Jimmy Carroll OWENS, Bank of Salem,
and United States of America Farmers
Home Administration, Appellees.

No. B–C–87–68.

United States District Court,
E.D. Arkansas, N.D.

Aug. 10, 1987.

John Gregg, Batesville, Ark., for plaintiff.

William Adair, Jr., Batesville, Ark., for defendants Jimmy Owens and Sue Owens.

Dwayne Plumlee, Salem, Ark., for defendant Bank of Salem.

Ken Stowll, U.S. Atty., Little Rock, Ark., for U.S. of America Farmers Home Admin.

## MEMORANDUM OPINION

ROY, District Judge.

This is an appeal by the Bank of North Arkansas ("BNA") from the December 2, 1986, Order of the United States Bankruptcy Court, Eastern District of Arkansas, Northern Division, finding, *inter alia*, that BNA has no lien on certain dairy subsidy

payments due Jimmy Carroll Owens from the United States Department of Agriculture, Agricultural Stabilization and Conservation Service ("ASCS"). The parties have filed their briefs and this matter is ripe for determination.

On May 14, 1986, debtors filed their chapter 11 petition with the Bankruptcy Court. Shortly thereafter, on July 21, 1986, BNA filed its adversary complaint against debtor Jimmy Carroll Owens, Bank of Salem ("Salem"), and the United States of America by and through Farmers Home Administration ("FmHA") seeking an order from the Bankruptcy Court directing that any and all subsidy funds payable to debtors by ASCS under the dairy subsidy program designated the "Dairy Termination Program" ("DTP") be paid into the registry of the Court pending a determination of the parties' rights in such funds. The Bankruptcy Court properly found that the action was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and that it had jurisdiction to enter a final judgment.

After trial of the adversary proceeding on September 11, 1986, the Bankruptcy Court found, in part, that:

1. BNA has no lien upon the DTP payments to debtors from ASCS.

2. Salem has a valid security interest in the payments prior in time and right to the interest of any other creditor.

3. Debtors assigned the benefits of the payments to FmHA in April of 1986; however, that assignment is subject to the lien of the Bank of Salem. Further, that assignment was not a preference under 11 U.S.C. § 547.

It is from these findings that BNA brings this appeal. Counsel for BNA has requested oral argument of this case pursuant to Bankruptcy Rule 8012; however, after careful review, the Court finds that the decisional process would not be significantly aided by oral argument. The request, therefore, is denied.

Inasmuch as the parties to this appeal have stipulated to all relevant facts, the Court need not concern itself with a review of any factual findings of the bankruptcy court, for only legal issues are involved herein. The bankruptcy court's conclusions of law are subject to *de novo* review. *In re Comer*, 723 F.2d 737 (9th Cir.1984). Accordingly, this Court will make an independent determination of the legal issues presented.

BNA has raised two issues for this Court's consideration—first, whether BNA has a "valid first security interest lien on the 'Dairy Termination Program' payments pursuant to its first perfected security interest ...," and, second, if so, whether "any federal regulations invalidate the security interest of [BNA]." Inasmuch as the Court finds that it must resolve the first issue against BNA, no discussion of the second is necessary.

On or about May 17, 1983, debtor Jimmy Owens executed to BNA a promissory note for $175,254.75, payable in 15 annual installments. The financing statement and security agreement securing the note were perfected in accordance with Arkansas law on May 26, 1983. The note was secured by collateral consisting of 148 head of cattle and five pieces of farm equipment. In pertinent part, the note provides as follows:

Property—When used in this agreement, the term property means and includes:

(a) All of my property specifically listed and, if a general description is used (whether or not any specific property is listed), in all of my property fitting the general description; and

(b) all benefits which arise from the described property, including cash or non-cash proceeds, insurance benefits, interest, dividends, stock splits, and voting rights; and

(c) any property which is now or hereafter becomes attached to, a part, or results from the described property.

As is clear from the quoted section, BNA was not specifically granted any interest in the DTP payments, for they were simply not mentioned. If BNA has any interest in the payments, it must arise through the interpretation of more general language in the note and security agreement.

BNA contends that the payments are "proceeds" arising from the specified col-

lateral, and that as such they are subject to its lien. "Proceeds" are defined by the Uniform Commercial Code as including "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Ark.Stat.Ann. § 85–9–306(1) (Supp.1985). The Bankruptcy Court determined that the payments are not "proceeds."

■ Addressing the very issue now before us, the Court in *In re Frasch*, 53 B.R. 89 (Bkrtcy.D.S.D.1985), held that a creditor with a perfected security interest in all the debtors' livestock and "all natural increase, purchase, exchange, and issue thereof" did not have an interest in the debtors' ASCS milk diversion program payments. There, the court stated that "milk diversion program payments . :. are not the proceeds of anything. They are entitlements stemming from an agreement the debtors made to produce less milk—*not* a subsidy for milk produced." *Id.*, at 90. This Court agrees with the court in *Frasch* and the bankruptcy court below that the payments are not "proceeds" as contemplated by the note and security agreement between BNA and the debtors. Thus, the Court finds that BNA has no security interest in the payments on that basis.

Having found that BNA has no interest in the payments as "proceeds," the Court must now determine whether BNA has an interest in them by virtue of any other language in the collateral description. Numerous courts have held that a security agreement must reasonably identify or describe each item of collateral in which a security interest is claimed in order for a lien to be enforceable. *See, e.g., In re Stump*, 8 B.R. 516 (Bkrtcy.D.S.D.1981); *In re Thornburg*, 31 B.R. 38 (Bkrtcy.D.S.D. 1983). Agreements granting security interests in "accounts" and "general intangibles" have been found to cover payments received under a "payment-in-kind" program ("PIK"), a federal program similar to the milk diversion program. *See, In re Mattick*, 45 B.R. 615 (Bkrtcy.D.Miss.1985); *Matter of Binning*, 45 B.R. 9 (Bkrtcy.S.D. Ohio 1984). Indeed, the Eighth Circuit Court of Appeals held in *In re Sunberg*, 729 F.2d 561 (8th Cir.1984) (interpreting Iowa law), that PIK payments are covered by a security agreement granting a security interest in "general intangibles."

■ In the instant case, as previously expressed, the security agreement between BNA and debtors provided that the property subject to the lien would include "all benefits which arise from the described property, including cash or non-cash proceeds, ... and ... property which is now or hereafter becomes attached to, a part, or results from the described property." BNA submits that this language is sufficiently broad so as to bring the DTP payments within the coverage of its security interest.

The Court does not agree with that conclusion. Moreover, it is the very overbreadth of the language that defeats BNA's argument. For the sake of comparison, one may review the security agreement of Salem and its inclusion of "accounts," "general intangibles," and "receivables" for an example of how such documents may be drafted to encompass subsidy payments. As did the bankruptcy court below, this Court finds that the collateral description in BNA's agreement does not reasonably identify the payments as property upon which the lien would be effective. For that reason, and others set out herein, the Court finds that BNA has no security interest in or lien upon debtors' DTP payments. The Court further finds that Salem has a valid security interest in those payments which is prior to FmHA's claim. The Order of the Bankruptcy Court is hereby affirmed.