**FMB–FIRST MICHIGAN BANK, Plaintiff,**

**v.**

**Gary VAN RHEE, et al., Defendants.**

**No. G86–275 CA.**

United States District Court,
W.D. Michigan, S.D.

Oct. 5, 1987.

Cunningham, Mulder, & Breese, P.C. by Ronald J. Vanderveen, Holland, Mich., for plaintiff.

Dunn, Schouten & Snoap by Perry G. Pastula, Wyoming, Mich., bankruptcy trustee for estates of Kenneth and Kathleen Van Rhee.

Kluczynski, Firtz & Vogelzang by Richard Radke, Jr., Grand Rapids, Mich., for Wayland Livestock Auction.

C. Blair Mohney, Grand Rapids, Mich., for Lake Odessa Livestock Auction Inc.

Mohney, Goodrich & Titta by Bruce C. Necker, Grand Rapids, Mich., for Lake Odessa Livestock Leasing Co.

James H. Sullivan, Wyoming, Mich., for Gary Van Rhee, Karen Van Rhee, Kenneth Van Rhee, and Kathleen Van Rhee.

Miller, Johnson, Snell & Cummiskey by Richard Postman, Steven Bratschie, Grand Rapids, Mich., for Maynard VanNoord and Bank of Hudsonville.

## OPINION

BENJAMIN F. GIBSON, District Judge.

### I. INTRODUCTION

This matter comes before the Court pursuant to defendants' motions for summary judgment and an appeal of a magistrate's Order denying cross-plaintiff's motion to file a fourth amended complaint. This case involves the disposition of defendants Kenneth Van Rhee and Gary Van Rhee's dairy cows and funds received as a result of said disposition. The funds in dispute include monies paid by defendants Lake Odessa Livestock Leasing Company and Lake Odessa Livestock Auction, Inc. (collectively "Lake Odessa"), Wayland Livestock Auction Inc. ("Wayland"), and Hopkins Livestock Auction ("Hopkins"). The funds also include payments under the Department of Agriculture, Agriculture Stabilization and Conservation Service's ("ASCS") Dairy Termination Program ("DTP"), currently on deposit with the Court pursuant to Orders of the Court dated May 2, 1986 and February 23, 1987. All parties, including the

Department of Agriculture, stipulated to the entry of said Orders.

Defendants Bank of Hudsonville ("Hudsonville") and Maynard VanNoord ("VanNoord") have filed a motion for summary judgment challenging plaintiff FMB–First Michigan Bank's ("FMB") interest in the deposited funds. The defendants also challenge the authority of the Court to assert control over the funds pending final disposition of this matter. Defendant Wayland has also moved for summary judgment. It is Wayland's position that the claims against it are barred under the Michigan Commercial Code. In a letter dated May 1, 1987, defendants Hudsonville and VanNoord requested oral argument on this matter. However, after careful review, the Court finds that oral argument is unnecessary for resolution of this matter. Accordingly, defendants' request is denied.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982), *see Willetts v. Ford Motor Co.*, 583 F.2d 852, 854 (6th Cir.1978); *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir.1976). The function of a motion for summary judgment is not to allow the court to decide issues of fact but rather to determine whether there is an issue of fact to be tried. *United States v. Articles of Device, Etc.*, 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper Wells & Co.*, 234 F.2d 342, 345 (6th Cir.1956). The moving party bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Articles*, 527 F.2d at 1011. In determining whether

there are genuine issues of fact warranting a trial, the evidence will be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). If a disputed question of material fact remains, the motion for summary judgment must be denied. *Atlas*, 668 F.2d at 908; *Felix*, 536 F.2d at 1030; *Bohn*, 303 F.2d at 427.

## III. HUDSONVILLE AND VANNOORD'S MOTION FOR SUMMARY JUDGMENT

The motion filed by defendants Hudsonville and VanNoord presents three issues for resolution. The first issue concerns whether FMB has a perfected security interest in the funds received by the Van Rhees pursuant to the DTP. The second issue presented is whether any security interest enuring to FMB was extinguished by the federal regulations governing the DTP. Assuming defendants are entitled to summary judgment, the third issue presented is whether sanctions should be imposed on the remaining parties for pursuing this cause of action. These issues will be discussed *seriatim*. [1]

Defendants, Kenneth Van Rhee and Gary Van Rhee, are dairy farmers. Plaintiff FMB made loans to Gary Van Rhee and received a security interest in certain assets of Gary and Karen Van Rhee including, but not limited to, livestock, products from livestock, and proceeds thereof. FMB also received an assignment of milk proceeds. Security agreements identifying FMB's interest were executed on or about February 16, 1981; April 26, 1982 and September 16, 1983. In each instance, the appropriate financing statement perfecting FMB's interest was executed and filed. Specifically, the security agreement dated

---

**1.** The defendants have also questioned the application of Michigan law in determining the relative interests of the parties. The Court notes that in all cases concerning the characterization of payments received in ASCS programs, the Uniform Commercial Code has been applied. This is so whether designated as state law or "federal common law." *See* cases cited *infra.* The Uniform Commercial Code has been adopted by the State of Michigan and any distinction between the Uniform Commercial Code and the Michigan version is irrelevant for purposes of this motion.

September 16, 1983, provides, in relevant part, the following description of collateral:

ALL LIVESTOCK of every kind and description whether now or hereafter owned, existing or acquired, including all products and proceeds thereof;

ALL FARM PRODUCTS consisting of growing crops whether now or hereafter owned, existing or after acquired, including the products thereto used in the debtor's farming operation located in Ottawa County.

■ It is clear that FMB was not specifically granted a security interest in the DTP payments. Thus, if FMB has any interest in the payments, it must arise through interpretation of the general language in the security agreement. *See Apple v. Miami Valley Production Credit Association,* 614 F.Supp. 119 (S.D.Ohio 1985), *aff'd,* 804 F.2d 917 (6th Cir.1986); *Bank of North Arkansas v. Owens,* 76 B.R. 672 (E.D.Ark. 1987); *In re Bechtold,* 54 B.R. 318 (Bankr. D.Minn.1985). It is defendants' position that the security agreement does not cover the DTP funds because the funds are not "proceeds" and that, as a result, FMB has no interest in the monies on deposit with the Court. FMB contends that the funds are in fact "proceeds" as defined by the Michigan Uniform Commercial Code, M.C. L.A. § 440.9306(1), and that as such the monies are subject to their security interest.[2]

The DTP program operates in the following manner. In exchange for an agreement to slaughter or export currently owned livestock and to refrain from engaging in milk production for a period of five years, ASCS agrees to pay the producer, in this case the Van Rhees, a sum of money calculated to compensate for such actions. The amount of compensation paid is based on two things: 1) a bid amount per hundred weight of milk and 2) the base amount of milk marketed by the producer. 7 C.F.R. § 1430.455. It is clear from these factors that a farmer's decision to participate in the program would take into account both the value of the farmer's livestock, at least

to the extent it differs from the slaughter value of such livestock, and the value of income the producer would have derived from the sale of the milk produced, but for participation in the program.

Courts addressing the same or similar issues have held that a creditor with a perfected security interest in similar property, "livestock, farm products, and proceeds thereof," possesses an interest in payments made pursuant to an ASCS program. *Apple v. Miami Valley Production Credit Association,* 614 F.Supp. 119, 123; *In re Cupp,* 38 B.R. 953 (Bankr.N.D.Ohio 1984). Other courts have held that in order for creditors to have a perfected interest in such payments, the security interest must extend to contract rights or general intangibles. *In re Sunberg,* 729 F.2d 561 (8th Cir.1984); *Bank of North Arkansas v. Owens,* 76 B.R. 672; *In re Frasch,* 53 B.R. 89 (Bankr.D.S.D.1985). *Apple v. Miami Valley Production Credit Association* addressed the issue of the characterization of funds received under a "payment-in-kind" ("PIK") program, an ASCS program similar to the DTP program at issue here, 614 F.Supp. 119. The court held that a security interest in collateral identified as "all interests in crops including but not limited to ... corn, wheat and soybeans" was sufficient to cover payments received for goods furnished by the Government in lieu of crop production. *Id.* at 124. In reaching its conclusion, the court relied on the liberal definition to be given proceeds under the Uniform Commercial Code and determined that the definition was sufficiently broad to encompass payments received under the PIK program.

On appeal, the decision of the lower court was affirmed, on alternative grounds, by the Sixth Circuit Court of Appeals. *Apple v. Miami Valley Production Credit Association,* 804 F.2d 917. The Court of Appeals found the language in the security agreement providing for a security interest in "all" of the debtor's "interest" in the farm products controlling. Based on this language, the Court held it was not neces-

---

2. "Proceeds" are defined by the Michigan Uniform Commercial Code as including "whatever is received upon the sale, exchange, collection or other disposition of collateral of proceeds."

sary to decide whether the proceeds of the sale of PIK entitlements were "proceeds of crops" or not. The Court found that the debtor's interest in the PIK entitlements was contractual and further found that the express terms of the security agreement gave the creditor a security interest in that contractual right. *Id.* at 919.

Contrary to defendants' assertions, the court in *Grunzke v. Security State Bank of Wells,* reached a similar conclusion, 68 B.R. 446 (D.Minn.1987). In *Grunzke,* the district court upheld the finding of the bankruptcy judge that the creditor bank was not entitled to the full amount of the proceeds of DPT funds. Slip op. at 5. The court reached this conclusion not because the payments did not constitute proceeds of the debtor's farming operation, but because the debtor's interest in DPT funds arose post-petition. *Id. See* 11 U.S.C. § 552(a). In addition, the court concluded that although the bank had no interest in post-petition income, the bank was entitled to assert a lien on the DTP funds to the extent the creditor could establish that it was prejudiced by the sale of the cattle at slaughter value rather than market value. *Id.* The court's conclusion was based on the fact that the bank had a pre-petition security interest in the herd. *Id.*

In the instant case, the Court likewise concludes that FMB is entitled to assert a security interest in the DTP funds currently on deposit. To the extent the DTP monies may fairly be characterized as a substitute for income Gary Van Rhee would have received absent participation in the ASCS program, or to the extent such monies are compensation for the difference in the market value and slaughter value of the dairy herd, the funds are "proceeds" of Van Rhee's dairy business. Assuming, *arguendo,* that the DTP funds do not constitute proceeds, but are "contract rights" or "general intangibles," the description of the collateral contained in the security agreement is sufficiently broad to encompass such payments.

A review of the description of collateral contained in the FMB security agreements reveals that, in addition to the explicit reference to livestock, products from livestock, farm products, and proceeds thereof, the documents in question contain boxes to check for identifying collateral covered by the security agreement. Under Section F of the printed portion of the form "[s]pecific" collateral is defined as "the specific property, together with *all related rights,* shown below." This definition applies to the security interest created in the Van Rhee livestock, products and proceeds thereof. Like the language in the security agreements in *Apple,* this language is sufficiently broad to encompass payments received under the DTP program, whether characterized as "proceeds," "contract rights," or "general intangibles." *See Apple v. Miami Valley Production Credit,* 804 F.2d at 919. Thus, FMB has a perfected security interest in the DTP funds on deposit whether such monies represent proceeds of the collateral, general intangibles, or contract rights related to defendants Gary and Karen Van Rhee's property.

■ Having determined that the funds held on deposit are subject to FMB's security interest, the Court must determine whether FMB's interest in said funds are foreclosed by the ASCS regulations. It is defendants Hudsonville and VanNoord's position that the language in the regulation found at 7 C.F.R. § 1430.468(c) extinguishes any rights FMB might have in the DTP funds. The regulation provides as follows:

Any payment which is due any person shall be allowed without regard to questions of title under State law and without regard to any claim or lien against the unit or any milk produced from the unit, and the proceeds thereof, which may be asserted by any creditor except agencies of the United States Government.

Defendants assert that the clear intention of the regulation is that only assignments or security interests established pursuant to the federal regulations will be recognized. Defendants further assert that since none of the parties to this action have properly perfected an assignment as required under the regulation, there is no

basis for asserting a claim against the proceeds.[3]

The Court finds this argument unpersuasive. Numerous courts have addressed the validity of security interests in funds paid pursuant to governmental subsidy programs and, either explicitly or implicitly, have rejected the very arguments advanced by defendants. *See In re Sunberg*, 729 F.2d 561; *In re Mahleres*, 53 B.R. 86, 87–88 (Bankr.Colo.1985); *In re Cupp*, 38 B.R. 953. It has been generally held that the purpose of such limiting language is not to deny effect to valid liens under state law. *In re Cupp*, 38 B.R. at 956; *In re Lee*, 35 B.R. 663 (Bankr.N.D.1983). Rather the intent of such language is to limit responsibility of the Government for payment of subsidy monies to the wrong party and to relieve the Government of the necessity of identifying and protecting creditor's liens prior to dispersal of subsidy funds. *Id.* In any event, to construe the statute and corresponding regulations in such a manner as to destroy existing property rights would raise serious due process implications. *Apple v. Miami Valley Production Credit Association*, 614 F.Supp. 119, 124 n. 3. The Court declines to construe the regulations in such a broad sweeping and potentially unconstitutional manner in derogation of creditor's rights. *See United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1980). As a result, the Court finds as a matter of law that the limitations imposed by the statute do not prevent FMB from asserting its security interest in DTP funds.

■ In conclusion, the Court finds that plaintiff FMB has an identifiable interest in the DTP funds on deposit with the Court. The Court also finds that the federal regulation governing the dispersal of the funds does not act as a bar to the assertion of FMB's interest. The Court further finds that defendants Hudsonville and VanNoord lack standing to challenge the authority of

this Court to issue an injunction requiring the ASCS to deposit with the Court the DTP monies due the Van Rhees pending final resolution of this matter. The proper party to make such a challenge would be the Department of Agriculture, not individuals seeking to assert an interest in the funds. Accordingly, defendants' motion for summary judgment is denied.

As a final matter, defendants have petitioned the Court for attorney's fees pursuant to Federal Rule of Civil Procedure 11. The basis for defendants' request is the alleged failure of FMB and other parties to make a reasonable inquiry into the relevant law prior to filing its claim before this Court. Having found the position asserted by FMB and the other parties to be a reasonable one, defendants' request for attorney's fees is denied.

## IV. WAYLAND'S MOTION FOR SUMMARY JUDGMENT

■ Defendant Wayland has moved for summary judgment in connection with the claims asserted against it by FMB and Lake Odessa. FMB and Lake Odessa allege that Wayland is liable for the wrongful conversion of the Van Rhees' livestock which was sold by Wayland at auction. It is Wayland's assertion that, assuming a valid security interest in the cattle existed, it is nonetheless immune from liability for the sale pursuant to M.C.L.A. § 440.9307(1). The statute, as amended in 1984, provides that a commission merchant or selling agent who sells farm products in the ordinary course of business shall not be liable to the holder of a security interest in those farm products even though the security interest is perfected and the commission merchant or selling agent knows of its existence.

In response, the parties opposing the motion assert that Wayland is not immune from liability for conversion since the sale of the Van Rhees' livestock was not a sale

---

**3.** Apparently, there has been an assignment by the Van Rhees of their interest in the DTP funds to Hudsonville. Although Lake Odessa objects to this assignment, there is insufficient information before the Court to enable it to express at

this time an opinion regarding either the validity of such an assignment or its effect on the rights of the parties claiming an interest in the funds.

"in the ordinary course of business." In addition, the parties also contend that, under Michigan law, the Uniform Commercial Code does not apply to a claim of conversion and argue that, under Michigan common law, the auctioneer remains liable for the unauthorized sale of goods subject to a chattel mortgage, citing *Kearney v. Clutton*, 101 Mich. 106, 59 N.W. 419 (1894).

A review of the pleadings, the arguments presented and the evidence relevant thereto, leads the Court to conclude there are disputed issues of material fact relevant to the claim of conversion. The evidence presented is such that reasonable minds could differ on whether Wayland's conduct was such that liability for conversion could attach. There is also disputed evidence concerning whether the livestock sold by Wayland were subject to a security interest in the Van Rhees' property, whether the security agreements prohibited the sale of the cattle, or whether all or part of the livestock in question were in fact the property of Lake Odessa. *See Lettinga v. Agristor Credit Corporation*, 686 F.2d 442 (6th Cir.1982). The Court cannot say as a matter of law that the defendant's conduct was not wrongful. Accordingly, Wayland's motion for summary judgment is denied.

## V. LAKE ODESSA'S APPEAL OF THE MAGISTRATE'S DECISION

Defendants Lake Odessa have petitioned the Court for relief from an Order of Magistrate Brenneman denying Lake Odessa leave to file a fourth amended cross-complaint. On July 20, 1987, in an opinion delivered from the bench, the magistrate denied Lake Odessa's motion for leave to file a fourth amended complaint for purposes of asserting an equitable lien against the DTP funds currently on deposit with the Court. A motion for reconsideration of the magistrate's Order was subsequently denied.

Rule 15(a) of the Federal Rules of Civil Procedure provides that after an answer is filed, a party may amend its complaint only upon leave of the court or by written consent of the adverse parties. Even if there is no objection filed, the decision to grant or deny leave to amend pleadings lies within the sound discretion of the trial court, in this instance, the magistrate. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Although Rule 15(a) is to be liberally construed, leave to amend may be properly denied if made in bad faith or for purposes of delay, if the non-moving parties would be unduly prejudiced, or if a trial on the issues will be unduly delayed. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The court may also deny leave to amend if other good reasons exist. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

The magistrate made the following findings relative to Lake Odessa's motion to amend the cross-complaint. First the magistrate noted the procedural history of this cause of action, specifically, Lake Odessa's motion for leave to amend its cross-complaint on three different occasions to assert four separate claims. The magistrate found that the facts as well as the law relevant to the proposed claim were known to Lake Odessa throughout this proceeding. The magistrate observed that the ASCS regulations which threatened Lake Odessa's right to claim a security interest in the DTP funds were in effect prior to the initiation of this lawsuit and that the facts upon which the proposed claim is based were likewise in existence prior to the initiation of the suit.[4]

The magistrate found that, pursuant to the Pre–Trial Order of this Court dated February 12, 1987, discovery should have

---

4. The record reveals the following facts. This lawsuit was initiated in April of 1986. The defendants Kenneth and Kathleen Van Rhee filed a voluntary petition to be adjudged bankrupt on February 6, 1987, in the United States Bankruptcy Court for the Western District of Michigan. The record further reveals that prior and subsequent to the filing of the voluntary petition, numerous amendments to the complaint as well as extensions of deadlines have been allowed by the magistrate. Specifically, Lake Odessa has filed three previous motions to amend their cross-complaint, all of which had been granted by the magistrate.

been completed. The magistrate further found that if the motion to amend the complaint were granted, additional discovery would be needed, thus possibly delaying trial of this matter. The magistrate also found that the Pre–Trial Order gave all parties until March 1, 1987 to file additional motions to amend, but the instant motion was not filed until April 29, 1987, nearly two months after the deadline had passed.

The magistrate concluded that although Lake Odessa raised a new issue in its renewed motion, the effect of the bankruptcy proceedings on the pre-trial deadlines, that issue did not mandate that the motion be granted. Indeed, the magistrate noted that despite the automatic stay in effect the parties had agreed to proceed with the litigation. Numerous amendments to the complaint had been made, numerous motions had been filed by the various parties, and discovery had proceeded. In addition, the magistrate found that there were reasons, other than the mere timing of the motion, which weighed heavily in the decision to deny the motion to amend. In particular, the magistrate placed heavy emphasis on the fact that the proposed claim was one which could have been asserted in the original or first amended cross-complaint. The magistrate also noted that Lake Odessa itself had admitted no reliance on the stay and, assuming Lake Odessa had standing to enforce the stay, it had been waived by their active pursuit of this litigation.

Based on these facts, the magistrate once again concluded that the motion for leave to file a fourth amended complaint was untimely and that Lake Odessa had failed to produce a valid reason that the magistrate should overrule his May 18, 1987 ruling denying the motion for leave to amend. The decision of the magistrate is well-reasoned and leads this Court to conclude that the denial of the amendment was proper and does not constitute an abuse of discretion. Accordingly, the magistrate's Order denying leave to amend is affirmed.

## VI. CONCLUSION

In conclusion, the Court finds that Hudsonville and VanNoord's motion for summary judgment and Rule 11 sanctions is denied. The Court also finds that Wayland's motion for summary judgment is denied. The Court further finds that the magistrate's Order denying Lake Odessa's motion for leave to file a fourth amended complaint is affirmed.