**In the Matter of Larry E. LEHL, Barbara L. Lehl, Debtors.**

**Bankruptcy No. BK86–1606.**

United States Bankruptcy Court, D. Nebraska.

Nov. 12, 1987.

John Ballew, Scottsbluff, Neb., for debtors.

Robert Wickersham, Harrison, Neb., for Sec. Nat. Bank.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

Confirmation hearing was heard on June 8, 1987. Appearing for debtors was John Ballew of Scottsbluff, Nebraska. Appearing for Security National Bank was Robert Wickersham of Harrison, Nebraska.

### Facts

In April, 1986, debtors entered into a contract with the Commodity Credit Corporation ("CCC") to participate in a program administered by the Agriculture Stabilization Conservation Service ("ASCS") which provides payment of certificates issued by the CCC to the farmer for agreeing to limit the acreage of crops planted for harvest and to devote eligible acreage to approved conservation uses. Debtors filed for Chapter 13 relief in June 1986 and received CCC certificates post petition.

### Argument

Security National Bank ("Bank") asserts that its prepetition, perfected security interest covering contract rights and accounts extends to the CCC certificates and their proceeds that debtor received subsequent to bankruptcy filing.

Debtors claim that the language of Title 7, Part 770 of the Code of Federal Regulations, and the language on the face of the certificates preempt Security National

Bank's claim of secured status in both the certificates and their proceeds. Debtors additionally claim that, notwithstanding the applicability of the federal regulations, the Bank's financing statement does not cover certificates because the certificates are instruments which can be perfected only by possession.

Bank contends that Title 7, Part 770 of the Code of Federal Regulations was amended in late 1986. Therefore, the language on which debtors rely was not in effect when debtors entered into the CCC contract. Bank also argues that debtors must recognize state law interests even if the federal government does not. Alternately, if the Court finds that federal law prohibits security interests in the CCC certificates themselves, Bank argues that no such prohibition applies to the proceeds from the certificates. Because Bank's security interest included contract rights and the proceeds are a result of the CCC contract, Bank's interest in the proceeds should be recognized.

### Issues

1. Whether federal law preempts Bank's security interest in debtors' CCC certificates and their proceeds?

2. If federal law does not preempt Bank's security interest, does the Bank have a valid security interest in the certificates or their proceeds under state law?

### Conclusions of Law and Discussion

Turning to Issue No. 1, the relevant language on the face of the certificate, Exhibit 2, reads:

3. This certificate shall not be subject to any State law or regulation, including but not limited to State statutory and regulatory provisions with respect to commercial paper, *security interests*, and negotiable instruments. This certificate shall not be encumbered by any lien or other claim, except that of an agency of the United States Government.

Commodity Credit Corp. Commodity Certificate issued January 29, 1987, marked plaintiff's Exhibit 2 (emphasis added).

The regulation which authorizes the language contained on the certificate reads: Section 770.4 Commodity certificates.

. . . . .

(b) *Liens, encumbrances, and State law.*

(1) The provisions of this section or the commodity certificates shall take precedence over any state statutory or regulatory provisions which are inconsistent with the provisions of this section or with the provisions of the commodity certificates.

(2) Commodity certificates shall not be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the United States Government arising specifically under Federal statute.

(3) The provisions of this paragraph (b) shall apply without regard to the identity of the holder of the certificate.

7 C.F.R. § 770.4(b)(1)–(3) (1987). These sections were added to Title 7, Part 770 entitled "Commodity Certificates, In Kind Payments and Other Forms of Payment" in June, 1986. *See* 51 Fed.Reg. 21833–36 (1986). Although neither debtors nor creditor briefed the applicability or nonapplicability of this particular section, the Court finds it dispositive of Issue No. 1 and accordingly the Court need not address Issue No. 2.

Debtors' and Bank's briefs discuss Section 770.5, entitled "In kind payments." Debtors' affidavit and Exhibit 2, however, refer to *CCC Certificates*. Consequently, Title 7, Section 770.4, "Commodity Certificates", *supra*, contains the relevant language, not Section 770.5. The regulatory language is plain. It clearly overrides state-law authorized security interests in commodity certificates. From the context of Section 770.4, Congress must have intended that the certificates be unencumbered by creditors' claims in order for the certificates to be freely transferable and negotiable. *See* Pub.L. No. 99–198, 1985 *U.S. Code Cong. & Admin.News* (99 Stat.) 1448 (codified at 7 U.S.C. § 1445b–4 (Supp. 1987)). ("[T]he Secretary may make in-

kind payments ... by the issuance of negotiable certificates ....")

In December 1985, Congress authorized the 1986 through 1990 crop price support, payment and production adjustment programs. 51 Fed.Reg. 8428 (1986). For the first time, the Act provided for the issuance of certificates—as a payment alternative to the in-kind payments—to the participating farmer. 51 Fed.Reg. 8435, 8452 (1986). In March 1986, interim regulations to implement the Act were published, including rules directing the use of commodity certificates. *Id.* at 8453 (1986). The interim regulations were effective with respect to the 1986 crop year; however public comment was requested and would be considered before formulating the final rules in late 1986. *Id.* at 8426 (1986).

Interim Section 770.4(b)(8) published in March 1986 read: "State law and regulations shall not be applicable to the issuance, transfer, or redemption of commodity certificates. Commodity certificates, or the proceeds thereof, may not be subjected to any claim of lien by any creditor except agencies of the U.S. Government." [1] As a result of public comment and agency review of this interim regulation, the Department of Agriculture announced that interim Section 770.4 would be revised to include language requiring that

> [T]he provisions of Section 770.4 take precedence over any state statutory or regulatory provisions which are inconsistent with the provisions of the section or with the provisions of the commodity certificates. The revised regulations would also clarify, as requested by [a public] commenter, that the provisions of [section] 770.4(b) apply without regard to the identity of the holder of the certificate.

*Id.* at 36902. This revision appeared in a new interim rule published June 1986, *Id.* at 21834, and remained unchanged in the final rule. Page 881 *supra.* Title 7, Part 770 of the Code of Federal Regulations cites, *inter alia,* Title 15, Section 714b as statutory authority. Section 714b empowers the Commodity Credit Corporation, an agency within the Department of Agriculture, to, *inter alia:*

> [E]nter into and carry out such contracts or agreements as are necessary in the conduct of its business. State and local regulatory laws or rules shall not be applicable with respect to contracts or agreements of the corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not be applicable or to the extent that such laws or rules are inconsistent with such contracts or agreements.

15 U.S.C. § 714b(g) (1976). Although Section 714b(g) does not mention security interests or encumbrances, the CCC's power to preempt state and local regulatory laws is sufficient authority for the more specific rule contained in Title 7, Section 770.4 of the Code of Federal Regulations.

*In re Sunberg,* 729 F.2d 561 (8th Cir. 1984), is not precedent, as Bank argues, for this factual setting. In *Sunberg,* the debtors claimed that federal law, specifically Title 7, Section 770.6(e)–(f) of the Code of Federal Regulations, prohibited the Production Credit Association (PCA) from asserting a security interest in surplus corn debtors received under a 1983 payment-in-kind program ("PIK") funded by the United States Department of Agriculture. The PCA's security interest included after acquired contract rights, accounts and general intangibles. *Id.* at 562. When debtors attempted to pledge their PIK benefits as security for a loan from the Farmer's Home Administration, PCA objected, claiming the PIK benefits were already encumbered by the PCA security agreement. *Id.* at 562. The debtors claimed that Section 770.6(e)–(f) preempted PCA's interest. [2]

---

**1.** Interim Section 770.4(b) contained a subsection (a) and a subsection (b) with 8 parts. 51 Fed.Reg. 8453 (1986). The present Section 770.4 contains a subsection (a), a subsection (b) with 3 parts, a subsection (c), a subsection (d) with 6 parts, a subsection (e) with 2 parts, a subsection (f) with 2 parts, a subsection (g) with 3 parts and a subsection h. 7 C.F.R. § 770.4 (1987).

**2.** For an assignment of PIK commodities to be recognized by the Department of Agriculture, Section 770.6(e) required the producer to com-

In reaching its decision, the Eighth Circuit found that Title 7, Section 770.6(e)–(f) did not preempt state law. *Id.* at 563. Section 770.6(e)–(f) of Title 7 was added to the Code of Federal Regulations in 1983, 48 Fed.Reg. 9235 (1983), and deleted in 1986. 51 Fed.Reg. 8453, 21835 (1986). Therefore, the language of Section 770.6 interpreted in *Sunberg* is no longer in effect nor did the 1983 program have provisions for payment to farmers with CCC commodity certificates. The "new" rule at Section 770.4 is the operating regulation for the instant case. The development of this rule demonstrates the intent of the Department of Agriculture to clearly address the question of state-authorized security interests in relation to federally-authorized CCC commodity certificates.

The Court recognizes that debtors enrolled in the ASCS program prior to the relevant amendment to the regulations and prior to filing their Chapter 13 petition. However, the certificates were received post petition (See Exhibit 2 dated January 29, 1987) when the regulations were operative, and the certificate contains the preemptive federal language. P. 2, *supra.* Moreover, Section 770.4(b)(1) which reads that "[t]he provisions of this section *or the commodity certificates* shall take pecedence over any state statutory or regulatory provision ... inconsistent with the provisions of this section *or with the provisions of the commodity certificates*" (emphasis added) conclusively establishes the certificates' status as exempt from state security interests. And, the regulations were specifically intended to apply beginning with the 1986 crop year. *Id.* at 8428. Thus, no retroactive application exists, contrary to the Bank's contention.

Given that the certificates themselves are exempt from state security interests, the Court fails to see how Bank can argue that its security interest attaches to the proceeds from the post petition sale or exchange of the certificates. Certainly, Section 552(b) permits a prepetition security interest to extend to proceeds acquired by the debtor post petition, but only to the extent that such proceeds are derived from property secured prepetition. *See* 11 U.S.C. § 552(b) (1987). Without consideration of the Bankruptcy Code, Bank's security interest would extend to the proceeds of the certificates under state law only if Bank had a valid security interest in the certificates themselves. *See* Neb. U.C.C. § 9–306(2) (Reissue 1980).

In summary, the Court holds that Title 7 of the Code of Federal Regulations, Section 770.4, preempts and thus invalidates state security interests in either CCC certificates or proceeds from the sale or exchange of such certificates. This complaint by Bank appears the main objection to the confirmation of debtors' plan. If the Court receives no further objections within 15 days of this order, the plan is approved.

---

plete and file Form CCC–479 with the County Committee. Section 770.6(f) required that payments in kind "shall be made without regard to ... any claim of lien against the commodity, or proceeds thereof ...." *Sunberg* at 563.