In the Matter of Robert G. **CURRY** and Meda Lucile Curry, Debtors.

**ADAMS BANK & TRUST, a corporation, Plaintiff,**

v.

**McQUILLAN & SPADY, P.C., in all its corporate, individual, fiduciary and other capacities, Defendant.**

Nos. CV 89-0-545, CV 89-0-546. Bankruptcy No. 87-284.

United States District Court, D. Nebraska.

Jan. 30, 1990.

On Motion for Alteration of Rehearing April 12, 1990.

Thomas Ashby, Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for plaintiff.

Ken Spady, McQuillan & Spady, P.C., Ogallala, Neb., for defendant.

## MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on appellants' notices of appeal (Filing Nos. 1). Appellant McQuillan & Spady, P.C., appeals pursuant to Bankruptcy Rule 8001, *et seq.*, from an order of the Bankruptcy Court filed June 9, 1989, which found appellants liable to Adams Bank & Trust for conversion (CV. 89–0–545). Adams Bank & Trust, as cross-appellant, appeals from the same order of the Bankruptcy Court filed June 9, 1989, alleging that the Bankruptcy Court erred in its calculation of the amount to which McQuillan & Spady is liable to Adams Bank & Trust (CV. 89–0–546).

## FACTS

Debtors had a long business relationship with Adams Bank & Trust (hereinafter "Bank"). The Bank had loaned money to the debtors and perfected security interests in accounts, contract rights and general intangibles. No loans were made to the debtors after the fall of 1985, nor were any security agreements or U.C.C. financing statements executed after July 30, 1985 in favor of the Bank.

In March, 1986, debtors applied for participation in a government wheat program and received a 1986 advance deficiency payment in the amount of $2,497.98 on April 21, 1986. This check was endorsed and delivered to James M. McQuillan, President of McQuillan & Spady, who deposited it in a trust account. On December 19, 1986, debtors received a second wheat deficiency payment in the amount of $2,006.57, which was deposited in the debtors' personal account on December 22, 1986. Debtors also deposited on December 22, 1986, the sum of $3,227.82 which represented proceeds from the sale of a PIK (Payment-in-Kind) certificate received from the local ASCS office. On December 24, 1986, the debtors wrote a check on their personal account and deposited to McQuillan & Spady's trust account $3,500 as a retainer for legal services (Exhibit 38).

On May 21, 1986, McQuillan & Spady, at the direction of the debtors, paid $565 from the trust account to R.K. Nelson & Associates for accounting services rendered to the debtors. On October 30, 1986, McQuillan & Spady, at the direction of the debtors, paid the sum of $1,000 from the trust account to itself for legal services rendered. On December 17, 1986, McQuillan & Spady, at the direction of the debtors, paid the sum of $687.45 from the trust account to itself for legal services rendered. On December 17, 1986, the appellant, at the direction of the debtors, returned the sum of $245.52 to the debtors. At the conclusion of the above activities, the final balance in the trust account was $3,500.

On February 2, 1987, the debtors filed a Chapter 12 bankruptcy case. The debtors' Chapter 12 plan was objected to by Adams Bank & Trust on June 19, 1987, on the basis that the plan underestimated the Bank's secured claim.[1] Hearing was held on the objection and the Bankruptcy Court, on August 27, 1987, held that the government payments were either accounts or contract rights, and were subject to Adams Bank & Trust's security interests. The debtors were then given thirty (30) days to file an amended plan.

Adams Bank & Trust had filed this adversary proceeding against McQuillan &

---

1. Adams Bank & Trust objected to the Chapter 12 plan because it failed to consider the Bank's interest in the following:

United States government program payments, and proceeds thereof, including without limi-

tation those in the possession of the Debtor's counsel of record.

(Bankruptcy Filing No. 24, p. 2).

Spady on June 23, 1987. The Bank sought turnover of the funds paid to McQuillan & Spady, based on the alleged valid security interest of the Bank, and a finding that McQuillan & Spady had converted those funds.

McQuillan & Spady urged the Bankruptcy Court to find that the case of *In re Lehl,* 79 B.R. 880 (D.Neb.1987)[2] and other government regulations bar the Bank from asserting a security interest in the first deficiency payment made in April, 1986, or the second payment in December, 1986, or the PIK certificate proceeds. The Bankruptcy Court stated that the issue of whether the Bank's security interest was valid was previously litigated between Adams Bank & Trust and the debtors, who were represented by McQuillan & Spady, at the hearing on August 27, 1987, concerning Adams Bank & Trust's objections to the debtors' Chapter 12 plan. The Court stated that this decision, in which it held that the government program payments were subject to the security interest of Adams Bank & Trust, was final and binding on McQuillan & Spady as to this adversary proceeding. The Bankruptcy Court held, *inter alia,* that McQuillan & Spady was liable for conversion in the amount of $3,500 plus $1,687.45,[3] with interest from the date of the complaint, to Adams Bank & Trust. These appeals followed.

On appeal, McQuillan & Spady argues that the Bankruptcy Court erred in finding (1) that the Bankruptcy Court's order of August 27, 1987, was binding on it; (2) that the PIK certificates were subject to Adams Bank & Trust's security interest; (3) that the wheat deficiency payments were subject to Adams Bank & Trust's security interest; and (4) that Adams Bank & Trust was entitled to prejudgment interest from the date of the complaint. In its cross-appeal, Adams Bank & Trust alleges that the Bankruptcy Court erred in its decision in failing to hold McQuillan & Spady liable for conversion in an additional amount of $810.53.[4]

## DISCUSSION

On appeal, the Court may review the Bankruptcy Court's legal conclusions de novo, but the Bankruptcy Court's findings of fact may not be set aside unless clearly erroneous. *Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir.1987); *In re Martin,* 761 F.2d 472, 474 (8th Cir.1985). The Bank primarily relies on the case of *In re Sunberg,* 729 F.2d 561 (8th Cir.1984), for the proposition that state security interests are not preempted by federal regulations. That case involved a situation where the debtors had attempted to pledge their PIK benefits as security for a loan from the Farmers Home Administration. Production Credit Association objected claiming that the PIK benefits were already encumbered by a prior security agreement entered into between the debtors and PCA. *Id.* at 562. The Court reviewed the federal regulations[5] and the appendices to the PIK

---

2. On November 12, 1987, the Bankruptcy court decided the case of *In re Lehl,* 79 B.R. 880 (D.Neb.1987). The Court held that federal law preempts and thus invalidates state security interests in either Commodity Credit Corporation certificates or proceeds from the sale or exchange of such certificates. *Id.* at 883. The Court based its finding on Title 7 of the Code of Federal Regulations, Section 770.4, which first appeared in the interim rule of June 16, 1986.

3. This amount reflects the sum of $1,000, and the sum of $687.45, withdrawn from the trust account for legal services rendered by McQuillan & Spady. Both withdrawals were at the direction of the debtors.

4. Adams Bank & Trust urges the Court to find McQuillan & Spady liable for conversion for the payment from the trust account on May 21, 1986, in the sum of $565 to R.K. Nelson &

Associates for accounting services rendered to the debtors, and for the payment in the sum of $245.53 to the debtors from the trust account on December 17, 1986.

5. Specifically, the Court reviewed 7 C.F.R. §§ 770.6(e) and (f) which provided:

   (e) Assignments with respect to quantities of a commodity which can be received by a producer as payment in kind will be recognized by the Department [of Agriculture] only if such assignment is made on Form CCC–479, Assignment of Payment–In–Kind, executed by the assignor and assignee, and filed with the county committee.

   (f) Except as provided in paragraph (e) of this section, any payment in kind or portion thereof which is due any person shall be made without regard to questions of title under State law, and without regard to any

contracts finding no restriction on the nature and form of assignments of PIK commodities which would prohibit PCA's security·interest. *Id.* at 563. The Court stated that the "anti-assignment" provisions of 7 C.F.R. §§ 770.6(e) and (f) were "intended to insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties." *Id.*

The Court believes the Bank's reliance on *In re Sunberg* is misplaced. The regulations relied on in *In re Sunberg* are no longer in existence. Specifically, 7 C.F.R. § 770.6(e) and (f) were deleted in 1986. A new regulation, 7 C.F.R. § 770.4(b), containing preemptory provisions over state law first appeared in the interim rule of June 16, 1986, and became effective October 15, 1986. 51 Fed.Reg. 36904. Therefore, this Court finds that it may not rely on *In re Sunberg* in determining the effects of the October 15, 1986, regulation on the Bank's security interest.

The Bankruptcy Court, in its decision of *In re Lehl*, 79 B.R. 880 (D.Neb.1987), considered the preemptory effects of 7 C.F.R. § 770.4(b). In that case, the debtors entered into a contract with the Commodity Credit Corporation to participate in a program which provided payment of certificates to the farmer for agreeing to limit the acreage of crops planted for harvest and to devote eligible acreage to approved conservation uses. Security National Bank asserted that its pre-petition, perfected security interest covering contract rights and accounts extended to the certificates and their proceeds that the debtor received subsequent to the bankruptcy filing. The Bankruptcy Court reviewed the history of the federal regulations citing as authority 7 C.F.R. § 770.4 [6] which provides in part as follows:

> (b) *Liens, encumbrances, and State law.*
>
> (1) The provisions of this section or the commodity certificates shall take prece-

dence over any state statutory or regulatory provisions which are inconsistent with the provisions of this section or with the provisions of the commodity certificates.

> (2) Commodity certificates shall not be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the United States Government arising specifically under Federal statute.
>
> (3) The provisions of this paragraph (b) shall apply without regard to the identity of the holder of the certificate.

The Bankruptcy Court stated that the regulatory language is plain and clearly overrides state law authorized security interests in commodity certificates. The Court stated that, "[f]rom the context of Section 770.4, Congress must have intended that the certificates be unencumbered by creditors' claims in order for the certificates to be freely transferrable and negotiable." *Id.* at 881. The Bankruptcy Court carefully addressed Security National Bank's reliance on *In re Sunberg*, 729 F.2d 561 (8th Cir.1984). The Bankruptcy Court noted that the Court in *In re Sunberg* relied on 7 C.F.R. § 770.6(e) and (f) in reaching its decision. However, these regulations were added to the Code of Federal Regulations in 1983, 48 Fed.Reg. 9235 (1983), and deleted in 1986, 51 Fed.Reg. 8453, 21835 (1986). *Id.* at 883. Therefore, the language of § 770.6 interpreted in *Sunberg* was no longer in effect, but rather, the "new" rule at § 770.4 was the operating regulation. The Court held that 7 C.F.R. § 770.4 preempts and thus invalidates state security interests in either Commodity Credit Corporation certificates or proceeds from the sale or exchange of such certificates. *Id.*

In this bankruptcy proceeding, the Bankruptcy Court conducted a hearing on objection to confirmation, and on August 27, 1987, held that the government payments

---

claim of lien against the commodity, or proceeds thereof, which may be asserted by any creditor.

*Sunberg*, 729 F.2d at 562.

**6.** 7 C.F.R. § 770.4 is now located at 7 C.F.R. § 1470.4(b) (1989). Title 7, Part 1470 of the Code of Federal Regulations is entitled "Commodity Certificates, In Kind Payments, and Other Forms of Payment."

were subject to Adams Bank & Trust's security interest. In its memorandum opinion filed June 9, 1989, the Bankruptcy Court stated that the issue of whether the government program payments were subject to the security interest of the Bank was litigated between the Bank and the debtors, who were represented by McQuillan & Spady, at the hearing on the objection to confirmation. The Court stated its ruling was final as to the government payments in this case and that its decision was binding on McQuillan & Spady.[7] On appeal, McQuillan & Spady argues that the Bankruptcy Court erred in holding that it was bound by the Bankruptcy Court's decision of August 27, 1987. Arguments presented on appeal include the applicability of the doctrines of res judicata and equitable estoppel.

■ Concerning the argument of res judicata, the doctrine will bar claims if three requirements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privities were involved in both cases. *Headley v. Bacon*, 828 F.2d 1272, 1274 (8th Cir.1987), citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). In this case, the issue of whether the government payments were subject to the Bank's security interest was litigated between the Bank and the debtors. McQuillan & Spady was present at the proceeding for the purpose of providing legal representation to the debtors and was not present in its individual capacity. Concerning whether McQuillan & Spady was in privity with the parties at the proceeding, the Court finds that McQuillan & Spady was not in such a close relationship bordering on near identity so as to render it in privity thereby invoking the doctrine of res judicata.

■ Concerning equitable estoppel, it has been stated that the doctrine requires nothing more than that a court achieve fair play. *See, e.g., In re King Memorial Hos-*

pital, 19 B.R. 885, 891 (S.D.Fla.1982). Generally, the essential elements of the doctrine as to the party claiming the estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment or prejudice. The essential elements of the doctrine as related to the party to be estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or conduct which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. *See* 28 Am. Jur.2d *Estoppel and Waiver*, § 35 (1966). The Court finds that the doctrine of equitable estoppel is simply inapplicable to this case. There has been no conduct on the part of McQuillan & Spady which amounts to a false representation or a concealment of material fact, or conduct which was intended to convey a false impression so as to invoke the doctrine against McQuillan & Spady.

This Court is confronted with the issue of whether to bind McQuillan & Spady to a decision of the Bankruptcy Court from the hearing on the Chapter 12 objections, a proceeding at which McQuillan & Spady was not a party, and which decision this Court, as set forth below, finds to be erroneous. At the trial of August 23, 1988, the Bankruptcy Court stated in response to McQuillan & Spady's objection to the introduction of the Bankruptcy Court's order of August 27, 1987, that:

I agree that the decision on the Chapter 12 plan on an objection to Chapter 12 plan with regard to whether or not the

---

7. The Bankruptcy Court's August 27, 1987, decision was prior to its decision in the case of *In re*

*Lehl*, where it addressed federal regulation 770.-4(b).

bank has a lien is not the law of this case.

(Transcript of August 23, 1988, proceedings, 18:11–14).

■ Concerning the doctrine of law of the case, if an appellate court is convinced that a former decision is clearly erroneous and unsound and works manifest injustice to the parties, the Court is not bound by such decision. *Zurich General Accident & Liability Ins. Co. v. O'Keefe*, 64 F.2d 768, 770 (8th Cir.1933); *Northern Pacific Railroad Co. v. Van Dusen Harrington Co.*, 60 F.2d 394, 397 (8th Cir.1932). The Bank argues that the doctrine of law of the case supports the Bankruptcy Court's judgment.

■ The doctrine of law of the case generally applies to proceedings in a trial court after the case is remanded and to subsequent proceedings in a reviewing court. As set forth by this Court below, the Court finds that the decision of the Bankruptcy Court of August 27, 1987, was erroneous and clearly works an injustice to McQuillan & Spady. Accordingly, the Court finds that McQuillan & Spady will not be held bound to the August 27, 1987, decision of the Bankruptcy Court.

■ Title 7, Part 770 of the Code of Federal Regulations, cites 15 U.S.C. § 714b as statutory authority for its enactment. Specifically, § 714b empowers the Commodity Credit Corporation, *inter alia*, to:

[E]nter into and carry out such contracts or agreements as are necessary in the conduct of its business. State and local regulatory laws or rules shall not be applicable with respect to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not be applicable, or to the extent that such laws or rules are inconsistent with such contracts or agreements.

15 U.S.C. § 714b(g) (1976).

The Court finds that this statute is sufficient authority for the enactment by the Commodity Credit Corporation of the specific rules contained in Title 7, § 770.4 of the Code of Federal Regulations. The language of 7 C.F.R. § 770.4(b) is clear. Specifically, this regulation states, *inter alia*, that commodity certificates take precedence over any inconsistent state statutory or regulatory provisions and that the commodity certificates "*shall not* be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the United States government arising specifically under Federal statute." (emphasis added). A farmer, upon receipt of a certificate, may transfer the certificate to a purchaser for cash or to the Commodity Credit Corporation to redeem a quantity of grain. However, as provided in 7 C.F.R. § 770.4(c), "any such transfer must be in the full amount of the certificate, and can be effected only by restrictive endorsement on the back of the certificate, showing the name of the transferee and the date of the transfer."

The regulatory language contained in § 770.4 first appeared in the interim rule of June 16, 1986, and remained unchanged in the final rule. In this case, there were no security agreements or financing statements executed in favor of the Bank subsequent to July 30, 1985. The Payment–In–Kind certificate was received by the debtors and deposited in their personal account on December 22, 1986. The preemptory language of § 770.4 was therefore in effect at the time the debtors received their PIK certificate. Accordingly, the Court finds the PIK certificate was not subject to the Bank's prior security interest and McQuillan & Spady are not liable for conversion to the Bank for refusing to return the proceeds from the sale of the PIK certificate deposited in appellant's trust account.

Concerning the wheat deficiency payments received by the debtors, Title 7, Part 709 of the Code of Regulations, is controlling. The statutory authority cited for the enactment of Title 7, Part 709 of the Code of Federal Regulations is 16 U.S.C. § 590h(g) which provides as follows:

A payment which may be made to a farmer under this section, may be assigned, without discount, by him in writing as security for cash or advances to finance making a crop, handling or mar-

keting an agricultural commodity, or performing a conservation practice. Such assignment shall be signed by the farmer and witnessed by a member of the county committee or by an employee of such committee, except that where the assignee is a bank whose deposits are insured by the Federal Deposit Insurance Corporation, the Farmers Home Administration, or a production credit association supervised by the Farm Credit Administration, such assignment may be witnessed by a bonded officer of the lending institution. *Such assignment shall not be made to pay or secure any preexisting indebtedness.* This provision shall not authorize any suit against or impose any liability upon the Secretary or any disbursing agent if payment to the farmer is made without regard to the existence of such assignment. The Secretary shall prescribe such regulations as he determines necessary to carry out the provisions of this subsection. (Emphasis added).

The Court finds that 16 U.S.C. § 590h(g) is sufficient authority for the enactment of the specific regulation governing the wheat deficiency payments. Specifically, the controlling regulation is 7 C.F.R. § 709.3 and provides:

(a) A payment which may be made to a producer under any program to which this part is applicable may be assigned only as security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice, for the current crop year. No assignment may be made to secure or pay any preexisting indebtedness of any nature whatsoever.
(b) To finance making a crop means (1) to finance the planting, cultivating, or harvesting of a crop, including the purchase of equipment required therefor and the payment of cash rent for land used therefor, or (2) to provide food, clothing, and other necessities required by the producer or persons dependent upon him.
(c) Nothing contained herein shall be construed to authorize an assignment given to secure the payment of the whole

or any part of the purchase price of a farm or the payment of the whole or any part of a fixed commodity rent for a farm.

The case of *In re Bechtold*, 54 B.R. 318 (D.Minn.1985), is illustrative of the applicability of 7 C.F.R. § 709. The Court reviewed § 709.1 which sets forth that the purpose of the regulation is to "state the conditions under which a producer may assign his payment under ... [a] program to which this part is made applicable." The Court then reviewed § 709.3(a) and concluded that a reading of the regulations as a whole clearly indicates that the Secretary of Agriculture, in adopting the regulations, intended that the milk diversion payments be free of claims by others and be used to provide cash for farmers in financing a new crop. *Id.* at 321. The Bankruptcy Court held that as a matter of federal law, a prior security agreement could not attach to the government payments. *Id.* The Court also noted that the Court in *In re Sunberg*, 729 F.2d 561 (8th Cir.1984), in reaching its decision, did not consider Title 7, Part 709 of the Code of Federal Regulations.

In this case, the debtors had received wheat deficiency payments. Although the Court in *In re Bechtold* was addressing the regulations' applicability to milk diversion payments, a wheat payment clearly fits within the contemplation of the 7 C.F.R. § 709.3. The dictates of 7 C.F.R. § 709.3(a) are clear. Specifically, it is stated that "[n]o assignment may be made to secure or pay any *preexisting* indebtedness of any nature whatsoever." (emphasis added). In this case, no security agreements or financing statements were executed in favor of the Bank subsequent to July 30, 1985. The debtors received their first wheat deficiency payment on April 21, 1986. The second wheat deficiency payment was received on December 19, 1986. The debtors' indebtedness to the Bank was preexisting, and accordingly, the Court finds that the Bank's security interest did not attach to the wheat deficiency payments received by the debtors. It would defeat the purpose of the regulations to

hold that the wheat payments were subject to the Bank's prior security interest. *See* 7 C.F.R. § 709.1.

■ The Bank strenuously argues that the federal regulations should not preempt their security interests arising under state law. It is fundamental that where a conflict exists between federal and state law, the state law must yield. State law may be preempted by an express statement, by direct conflict with federal law, or by federal occupation of the field. *See e.g., Louisiana Public Service Commission v. FCC,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). As previously noted, the Court finds that Congress has sufficiently manifested its intention in 15 U.S.C. § 714b(g) and 16 U.S.C. § 590h(g) so as to render valid the preemptory effect of the regulations enacted pursuant thereto. The Court finds that the decision of Judge Mahoney in *In re Lehl* correctly analyzes the applicable statutes and regulations.

## CONCLUSION

As the Bank's security interest did not extend to the proceeds from the sale of the PIK certificate and to the two wheat deficiency payments received by the debtors, the Court finds McQuillan and Spady not liable to the Bank for conversion. In accordance with this opinion, the cross-appeal by Adams Bank and Trust is rendered moot. The Court will reverse the decision of the Bankruptcy Court and remand this proceeding with instructions that judgment be entered in favor of McQuillan and Spady. A separate order in accordance with this opinion will be issued this date.

## ON MOTION FOR ALTERATION OR REHEARING

This matter is before the Court on the motion for alteration of order and, alternatively, for rehearing of Adams Bank and Trust (Filing No. 8). Adams Bank and Trust filed its motion urging this Court to alter its order dated January 30, 1990, to recognize that certain advances made by Adams Bank and Trust to the debtors were not "preexisting debt" and were therefore subject to its security interest.

■ The debtors applied in March, 1986, for participation in a government wheat program, and had received wheat deficiency payments on April 21, 1986, and December 22, 1986. In its memorandum opinion, the Court failed to discuss the effect of an advance by Adams Bank & Trust to the debtors on May 6, 1986, for fuel in the amount of $1,000, and an advance to the debtors on July 24, 1986, for multi-peril crop insurance for the debtors' wheat in the amount of $381. The Court finds that these advances constitute proper financing of a crop for the current crop year within the meaning of 7 C.F.R. § 709.3(b).[1] Therefore, these advances in the amount of $1,381 are validly encumbered by Adams Bank and Trust's security interest. The unlawful retention of these funds by McQuillan and Spady will subject it to liability for conversion to Adams Bank & Trust. One who converts or aids in the conversion of property is responsible to the owner for its value. *Sprague v. Allied Mills,* 129 Neb. 394, 261 N.W. 892 (1935).

The security interest of Adams Bank does not extend to the remaining advances urged by the Bank as this would constitute either an encumbrance of government program payments by preexisting debt or an unauthorized disposition of funds under the applicable regulations. As the security interest of Adams Bank and Trust was valid against the government program payments to the extent of $1,381, and further that McQuillan and Spady retained this sum in violation of Adams Bank and Trust's rights, the Court finds that McQuillan and Spady is liable for conversion to Adams Bank and Trust in the amount of $1,381, plus interest from the date of the complaint. To the extent not inconsistent with

---

**1.** The debtors' application for participation in the government wheat program in March, 1986, is the proper time period for an analysis of whether the government proceeds were encumbered by preexisting debt, and any inference by the Court in its prior memorandum opinion that the proper period is when the government proceed checks are actually received is specifically rejected.

this memorandum opinion, the Court's memorandum opinion dated January 30, 1990, is adopted in full.

IT IS ORDERED that the decision of the Bankruptcy Court dated June 9, 1989, is reversed; this matter is remanded to the Bankruptcy Court for entry of judgment in accordance with the memorandum opinion and order entered this date.