HEANEY, Circuit Judge.
 

 Dwayne and Patricia Sunberg filed a voluntary petition in bankruptcy under Chapter 11 of the 1978 Bankruptcy Code on April 12, 1983. They appeal from a May 16, 1983, order of the bankruptcy court, 35 B.R. 777, denying their application to incur secured debt under 11 U.S.C. § 364 (1982). They allege that the court erred in finding that their benefits under the 1983 payment-in-kind program of the United States Department of Agriculture (USDA) were general intangibles pledged as security under the after-acquired clause in a security agreement entered with the Production Credit Association (PCA) in 1982. We affirm.
 

 The Sunbergs have farmed in the Hamlin, Iowa, area since 1961. They owned 495 acres and rented another 400 acres, on which they primarily planted corn and soybeans. Since 1980, they regularly borrowed money from PCA and owed it $302,-669.90 in principal and $149,823.90 in interest when this action was brought. In 1982, the Sunbergs and PCA entered a second agreement to secure the growing indebtedness, giving PCA a security interest,
 
 inter alia,
 
 in the Sunbergs’ “existing or hereafter acquired * * * crops, growing crops, livestock, farm products, equipment, inventory, fixtures, contract rights, accounts and general intangibles.” PCA perfected this security interest by filing an amended financing statement with the Iowa Secretary of State on April 20, 1982.
 

 On February 9 and March 9, 1983, Dwayne Sunberg signed application forms and contracts to participate in the federal payment-in-kind (PIK) program, under which he would devote approximately 198
 
 *562
 
 acres of his owned and rented land to non-crop use in 1983 in return for 12,152 bushels of surplus corn from the United States.
 
 See
 
 Special Program of Payment in Kind for Acreage Diversion for 1983 Crops, 48 Fed.Reg. 1476, 9232 (1983) (to be codified at 7 C.F.R. §§ 770.1-.6). The Commodity Credit Corporation (CCC) of the USDA approved these contracts on March 16, 1983.
 

 During the last half of 1982 and into 1983, the Sunbergs could not meet their financial obligations because of high overhead expenses and low crop prices. They filed their voluntary petition in bankruptcy on April 12, 1983, and made application to incur secured debt on April 13, 1983. They intended to pledge the PIK benefits under the March 16 contracts, livestock, and their 1983 crops as security for a loan from the Farmers Home Administration (FmHA). PCA objected to the application on the ground that the PIK benefits were already encumbered under the 1982 security agreement between the Sunbergs and PCA. The bankruptcy court agreed with PCA and denied the Sunbergs’ application on May 16, 1983. The parties agreed to a direct appeal before this Court under 28 U.S.C. § 1293(b) (Supp. V 1981).
 

 The Sunbergs attempt to avoid the lien on their PIK benefits by characterizing those benefits as property acquired after the commencement of their bankruptcy case under 11 U.S.C. § 552(a) (1982). If PCA’s security interest covered the PIK contracts and the proceeds of pledged collateral prior to the Sunberg’s petition in bankruptcy, however, the proceeds of those contracts realized after the petition would continue to be encumbered absent a bankruptcy court order to the contrary based on the equities of the particular case.
 
 Id.
 
 § 552(b). The Sunbergs’ 1982 security agreement with PCA explicitly incorporated a provision stating that “[pjroceeds of collateral are also covered,”
 
 see
 
 Iowa Code Ann. §§ 554.9203(3), 554.9306(1) (West Supp.1983), and the bankruptcy court found no equities requiring disregard of the agreement. Thus, their position on appeal reduces to two questions: (1) whether their rights under the March 16, 1983, PIK contracts were proper collateral to secure PCA’s loans to them as a matter of state commercial law; and (2) whether federal law allowed PCA to assert a security interest in the PIK benefits. The bankruptcy court answered both questions in the affirmative. We agree.
 

 First, the Iowa Commercial Code clearly allows a security interest to attach to general intangibles, which are defined in a catch-all manner to include “things in action.”
 
 See id.
 
 §§ 554.9102(l)(a), 554.-9106. Furthermore, the statutory definition of “account” in Iowa includes a right to payment for services rendered “whether or not it has been earned by performance.”
 
 Id.
 
 § 554.9106. The Sunbergs do not deny that the security agreement in this case could reach after-acquired property which was otherwise valid collateral under Iowa law.
 
 See id.
 
 § 554.9204(1). Given the breadth of the statutory definitions of collateral in Iowa, we agree with the bankruptcy court that the Sunbergs’ rights under the PIK program were subject to the security interest asserted by PCA herein as a matter of state law. This conclusion is reinforced by the Sunbergs’ admitted intent to pledge the PIK benefits as security for a new loan from the FmHA: if the benefits were not proper collateral under Iowa law for PCA’s loan, neither would they be proper collateral to support a new FmHA loan.
 

 In addition, the parties were aware of various governmental farm subsidies when they entered the 1982 security agreement and intended PCA’s security interest to cover any such after-acquired subsidies. As the Ninth Circuit stated in a related context, the agreement must have been drafted “with an awareness of the importance of the various forms of federal subsidy payments to the realities of financing a farming operation.”
 
 In re Munger,
 
 495 F.2d 511, 513 (9th Cir.1974).
 
 Accord In re Nivens,
 
 22 B.R. 287, 291-292 (N.D.Bkrtcy.Tex.1982) (proceeds covered by security agreement included federal deficiency and disaster payments). The parties may not
 
 *563
 
 have foreseen the degree of PIK benefits nor the details of the program, but the same can be said of most collateral acquired after a security agreement is entered.
 

 Second, we find nothing in the PIK program which would preclude the Sun-bergs and PCA from agreeing to use the PIK benefits as security. The appendices to the March 16, 1983, PIK contracts and federal regulations do put restrictions on the nature and form of assignments of PIK commodities which will be recognized by the federal government. Specifically, federal regulations state:
 

 (e) Assignments with respect to quantities of a commodity which can be received by a producer as payment in kind will be recognized by the Department [of Agriculture] only if such assignment is made on Form CCC-479, Assignment of Payment-In-Kind, executed by the assignor and assignee, and filed with the county committee.
 

 (f) Except as provided in paragraph (e) of this section, any payment in kind or portion thereof which is due any person shall be made without regard to questions of title under State law, and without regard to any claim of lien against the commodity, or proceeds thereof, which may be asserted by any creditor.
 

 48 Fed.Reg. 9235 (1983) (to be codified at 7 C.F.R. § 770.6(e)-(f)).
 

 The Sunbergs assert that these provisions evince an administrative intent that they take their PIK benefits free of liens not filed with the county committee and preempt PCA’s security interest in those benefits. The bankruptcy court disagreed, as do we.
 

 These provisions merely govern the rights of parties claiming PIK benefits directly from the federal government. They do not prevent one who is entitled to the benefits from pledging the benefits as security on loans properly made under state law. Simply because the government will refuse to deliver the benefits to an assign-ee not appearing on the proper federal forms does not mean that an assignor can totally disregard legal obligations to the assignee. Such “anti-assignment” provisions are intended to insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties.
 
 See Segal v. Rochelle,
 
 382 U.S. 375, 384, 86 S.Ct. 511, 517, 15 L.Ed.2d 428 (1966);
 
 In re Nivens, supra,
 
 22 B.R. at 291. Neither do we read anything in other PIK regulations to restrict program beneficiaries from voluntarily encumbering their PIK benefits. Indeed, the Sunbergs wished to so encumber their benefits in return for a new loan from the FmHA. This they could not do because the benefits had already been pledged as security on PCA’s loans prior to their voluntary petition in bankruptcy.
 

 For these reasons, we affirm the bankruptcy court’s denial of the Sunbergs’ application to incur secured debt.