**UNITED STATES of America, Plaintiff,**

v.

**CAROLINA EASTERN CHEMICAL COMPANY, INC., Defendant.**

Civ. A. No. 3:85–1344–15.

United States District Court,
D. South Carolina,
Columbia Division.

May 8, 1986.

Glen E. Craig, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

Willis Fuller, Jr., Charleston, S.C., for defendant.

HAMILTON, District Judge.

This declaratory judgment action brought pursuant to 28 U.S.C. § 2201 seeks to determine whether the government or the defendant is entitled to certain funds, amounting to Thirty-seven Thousand Ninety-nine and 80/100 Dollars ($37,099.80) currently held in a certificate of deposit in the South Carolina National Bank. As this action has been commenced by the United States, the court has jurisdiction under 28 U.S.C. § 1345.

The facts have been stipulated by the parties. The government, through the Farmers Home Administration, made several loans to G.H. and Elizabeth H. McCutchen, farmers from Lee County, South Carolina. To secure their indebtedness, the McCutchens executed several security agreements and real estate mortgages in favor of the government. The security agreements, signed on July 5, 1979, February 8, 1980 and August 30, 1982, gave the government security interests in all crops grown within seven (7) years from the date of the agreement, including the "proceeds and products" thereof. (See Government Exhibits 1, 2 and 3).[1] On July 3, 1979 and February 7, 1980 the government filed UCC–1 financing statements. (See Government Exhibits 4 and 5). On July 5, 1979, March 23, 1981 and May 13, 1982 the McCutchens executed and recorded real estate mortgages covering rents and profits of the land in favor of the government. (See Government Exhibits 6, 7, 8 and 9).[2]

---

1. Specifically, these agreements provided in pertinent part that:

DEBTOR HEREBY GRANTS to Secured Party a security interest in his interest in the following collateral, including the proceeds and products thereof:

*Item 1.* All crops, annual and perennial, ..., growing or grown, ... (a) within the one-year period or any longer period of years permissible under State law....

S.C.Code Ann. § 36–9–204(4) (1976) authorizes a security interest in crops grown within 7 years from the date of the agreement.

2. In pertinent part the real estate mortgages provided that:

In August 1982 the defendant, Carolina Eastern Chemical Company, Inc., a creditor of McCutchen's, filed suit against G.H. McCutchen to recover the costs of chemicals and supplies McCutchen purchased for his 1981 and 1982 growing season. The defendant obtained a judgment against McCutchen for Seventy-seven Thousand One Hundred Eighteen and 45/100 Dollars ($77,118.45) on September 1, 1982.

In 1983, Mr. McCutchen entered into a contract to participate in the United States government's 1983 Payment-In-Kind (PIK) Diversion Program, run by the Commodity Credit Corporation, a federally chartered agency charged with the responsibility of administering the program. *See* 7 U.S.C. § 1444(h). Under the program, a farmer agrees to remove from production a certain percentage of his farm's acreage base and designated crops. The farmer also agrees to adopt several soil conservation techniques. If the farmer follows the procedures, the government transfers to him a percentage (paid in a commodity) of what his diverted or nonproducing acreage would normally yield. Specifically, the amount of PIK payment is calculated by multiplying a set percentage of the proven historical crop yield times the number of acres set aside. *See* 7 U.S.C. § 1444(e); 1445b–1(e); 7 C.F.R. § 770 *et seq.* (1984). Oftentimes the government in fact "pays" the farmer in the same commodity the farmer would otherwise have grown on the nonproducing land.

Thereafter, the government, in consideration of McCutchen's participation in the 1983 PIK program, issued McCutchen a PIK entitlement certificate representing a certain amount of cotton. The cotton represented by this certificate was sold by the Carolinas Cotton Growers Association, Inc. in Raleigh, North Carolina. On February 15, 1984, a check in the amount of Thirty-seven Thousand Ninety-nine and 80/100 Dollars ($37,099.80) covering the proceeds of this sale of cotton was issued, made jointly payable to the Farmers Home Administration and G.H. McCutchen. In the interim, however, the defendant Carolina Eastern had sought to attach the PIK certificate in satisfaction of its September 1, 1982 judgment against McCutchen. Pursuant to an agreement for the satisfaction of this judgment, on June 1, 1984, G.H. McCutchen endorsed his interest in the Carolina Cotton Growers Association, Inc. check over to the defendant.

By mutual agreement of the litigants, pending this court's decision on the parties' entitlement to the funds, the funds from the PIK entitlement certificate were deposited in a certificate of deposit with the South Carolina National Bank in Charleston, South Carolina, in the joint name of the United States of America—Farmers Home Administration and Carolina Eastern Chemical Co., Inc. The funds are deposited in Certificate Number 245732.

The government and the defendant vigorously dispute their respective rights to the funds. In its complaint filed May 22, 1985 the government alleges that McCutchen's current unpaid indebtedness to the government, secured by numerous mortgages and security agreements, exceeds the funds received from the PIK certificate. Therefore, the government asks the court to declare the government entitled to all the funds at issue and to require the defendant to endorse its interest in the certificate of deposit over to the government. The government advances two distinct bases for its entitlement to the funds: (1) the funds are "proceeds" of the interest in crops given in the security agreements and (2) the funds are "rents and profits" of the land as included in the real estate mortgages. The defendant denies that the government is entitled to these funds by virtue of the mortgages or security agreements executed by McCutchen. Specifically, the defendant denies that any crop liens arising from the security agreements ex-

---

... Borrower does hereby grant, bargain, sell, release and assign unto the Government, with general warranty, the [subject property] together with ... the rents, issues, and profits thereof and revenues and income therefrom. ...

tend to proceeds of the federal payment-in-kind (PIK) program.

The court held the trial of this case on the morning of April 23, 1986. After receiving the arguments of counsel, carefully considering all the evidence, reviewing the exhibits and briefs, and studying the applicable law, the court concludes that neither the mortgages nor the security agreements executed by G.H. McCutchen afford the government any basis for claiming an interest in these funds. Therefore, for the reasons set out below, judgment will be entered for the defendant and the appropriate equitable relief will be directed.

The court is initially faced with resolving two distinct questions: (1) whether Payment-in-Kind (PIK) entitlements are "proceeds" of crop collateral, thereby allowing the holder of a valid security interest to assert a lien on such entitlements; and (2) whether PIK entitlements are "rents, issues, profits, revenues or income" of property subject to a real estate mortgage, thereby allowing a mortgagee to assert a lien on such entitlements.

## I. *The Government's Claim Under the Security Agreements*

■ As to the primary question concerning the PIK payments as "proceeds" of crop collateral, the court is cognizant of the sharply conflicting decisions on this point. Only three circuit courts of appeals and a handful of district and bankruptcy courts have addressed the matter. Although some common themes are discernible, the results upon application of the pertinent rules of law have differed considerably.

The most recent appeals court to address the question is the Seventh Circuit in *In the Matter of Schmaling*, 783 F.2d 680 (7th Cir.1986). In concluding that PIK payments could not be considered "proceeds" of crop collateral under the Uniform Commercial Code (U.C.C.), *Schmaling* adopted a "strict constructionist" view to interpreting security agreements. First, the court noted that a security interest granted by a debtor to a creditor is limited strictly to the

property or collateral described in the security agreement. *Id.* at 682 citing *Allis Chalmers Corp. v. Staggs*, 117 Ill.App.3d 428, 432, 72 Ill.Dec. 840, 843, 453 N.E.2d 145, 148; R. Anderson, 8 *Treatise on the Uniform Commercial Code* § 9–203:15 at 668 (3d ed. 1980). Second, the court noted that rather than giving an interest in all farm-related assets, the security agreement at issue there gave an interest only in "corn and all other crops grown or growing," *Schmaling*, 783 F.2d at 682, including proceeds and products thereof. As the court observed, Article 9 of the U.C.C. defines "proceeds" of crops as something received upon "sale, exchange, collection or other disposition" of the crops. U.C.C. § 9–306(2).[3] The court thus reasoned that since, in fact, there had never been a crop of which to dispose, and indeed the very consideration for a PIK payment was to forego planting a crop, there could not be any proceeds thereof. *Schmaling*, 783 F.2d at 683. Finally, with reference to those decisions that have concluded that because PIK payments are substitutes for crops that would otherwise have been grown, PIK receipts are "proceeds," *see Apple v. Miami Valley Production Credit Assoc.*, 614 F.Supp. 119 (S.D.Ohio 1985); *In re Judkins*, 41 B.R. 369 (Bankr.D.Tenn. 1984); *In re Cupp*, 38 B.R. 953 (Bankr.N. D.Ohio 1984); *In re Lee*, 35 B.R. 663 (Bankr.N.D.Ohio 1983), the court in *Schmaling* responded:

> But the fact that the farmer ended up with bushels of corn to distribute cannot obscure the fact that PIK corn is not a "crop" from that farmer's land. Nor should the federal government's intent in managing its agricultural programs or the broad economics of the transaction override the plain language of a security agreement which extends only to crops. The rationale of the transaction cannot cure clear deficiencies in the description of the collateral.

*Schmaling*, 783 F.2d at 683.

When confronted with the same question, however, the Ninth Circuit Court of

---

**3.** The comparable South Carolina provision is contained in S.C.Code Ann. § 36–9–306(2) (1976).

Appeals reached a contrary conclusion. In *In the Matter of Munger*, 495 F.2d 511 (9th Cir.1974) the court, according the term "proceeds" a flexible and broad content, concluded that to exclude from "proceeds" farm subsidy payments earned from abandoning the production of *already planted* sugar beet crops "would be to raise distinctions of form over the realities underlying this financing transaction...." *Id.* at 513. Significantly, though, in *Munger* there was evidence that the security agreements had been executed with an awareness of the subsidy payments, and an intent to bring such payments within the security agreements. In addition, the court in *Munger* stressed the preeminence of subsidy payments in sugar beet farming and concluded that interested third parties would be on notice of this fact. Therefore, the court considered the payments proceeds even "under the most grudging interpretation of the security agreement." *Id.* at 513.

Like the court in *Munger*, the Eighth Circuit Court of Appeals in *In re Sunberg*, 729 F.2d 561 (8th Cir.1984) found that PIK entitlements could be subject to the interest asserted by a secured party. However, in *Sunberg* there too was ample evidence that the parties had intended the security interest to cover such subsidies.[4] Thus, to a large extent the courts in *Munger* and *Sunberg* were simply applying traditional contract law principles governing the interpretation of contracts consistently with the parties' intentions at the time of execution.

The lower court decisions also reflect the split of authority noted among higher courts. *Compare Apple v. Miami Valley Production Credit Assoc.*, 614 F.Supp. 119, 123 (S.D.Ohio 1985) (PIK entitlements are "proceeds" of crop collateral) and *Osteroos v. Norwest Bank Minot, N.A.*, 604 F.Supp. 848, 849 (D.N.D.1984) (PIK payments are analogous to disaster relief payments and can be considered "crop proceeds") *with In re Kruse*, 35 B.R. 958, 965–66 (Bankr.D. Kan.1983) (recognizing a distinction in treatment between PIK payments for

agreeing to abandon already planted crops, and PIK payments for agreeing not to grow crops) ("To this Court's knowledge, no court has ever held that the rights under PIK, or any other entitlement program, *stemming from an agreement not to grow crops*, are proceeds of anything. Of what could it be proceeds? These payments were made if the debtors agreed *not* to create collateral.") (emphasis in text).

After a comprehensive examination of the cited authorities, this court finds the Seventh Circuit decision in *In the Matter of Schmaling* to be especially persuasive, and controlling in the present case. The court concludes that nowhere do the security agreements at issue here, *see* note 1, *infra*, furnish an identification of the collateral that could be construed broadly enough to reach the PIK payments. Additionally, not a shred of evidence was ever adduced, and the government does not even maintain, that the government and Mr. McCutchen ever envisioned bringing PIK payments within the ambit of these security agreements.

The simple fact is that Mr. McCutchen never planted any crops to which the government's interest in "crop proceeds" could attach. To ignore this fact, and to hold as the government urges (i.e., that PIK payments are proceeds of McCutchen's crops) not only does violence to the plain language of the security agreements and the plain meaning of the phrase "proceeds of crops," but invites the court to engage in a type of legal alchemy the court is disinclined to perform. This court is unwilling to rewrite the instant security agreements based on its divination of the parties' intent or to extend coverage of a security agreement beyond the four corners of the documents. *In the Matter of Binning*, 45 B.R. 9, 13 (Bankr.S.D.Ohio 1984).

Land diversion programs administered by the government have existed for almost fifty years. *Schmaling*, 783 F.2d at 684. As an agency of the government in farm

---

**4.** Indeed, the farmer in *Sunberg* admitted his intent to pledge the PIK benefits as security for a new loan from the Farmers Home Administration. *Sunberg*, 729 F.2d at 562.

loan programs the FmHA can hardly claim to be ignorant of such programs. As drafter of the subject security agreements, the FmHA will have the ambiguities in the documents construed against it. Should the government wish to bring PIK payments within security agreements executed in the future, it can easily alter the result obtained here by more careful drafting and explicit provisions.

## II. *The Government's Claim Under the Real Estate Mortgages*

 With reference to the government's argument that it may claim an interest in the PIK payments based on the language of the real estate mortgages concerning "rents and profits" of the land, *see* note 2, *infra*, the court is of the opinion that the government's efforts were premature. In *Sellars v. First Colonial Corp.*, 276 S.C. 548, 280 S.E.2d 805, 806 (1981) the Supreme Court of South Carolina set out the general rule:

> Generally, a mortgagee is not entitled to the rents and profits from the mortgaged property as a legal incident to, or as a legal right growing out of, his mortgage. However, the general rule may be modified by agreement of parties to the mortgage. [citations omitted].

At oral argument the government admitted that no foreclosure proceedings had been instituted against Mr. McCutchen. Further, this court has found no language in the real estate mortgages that varies the general rule of *Sellars* and allows the government to assert a lien upon the rents and profits of the land, prior to any foreclosure proceedings. In the absence of such action, the government cannot maintain an interest in the PIK payments. Given the existence of real estate mortgage foreclosure proceedings, the court would be constrained to conclude that PIK payments constituted "rents, issues, and profits" of the mortgaged property.

Based on the foregoing reasons and the cited authorities, the court declares that defendant Carolina Eastern Chemical Company, Inc. is entitled to all the funds deposited in Certificate Number 245732, at the South Carolina National Bank in Charleston, South Carolina. As these funds are currently held jointly by the United States of America—Farmers Home Administration and the defendant, the government is ordered to endorse its interest in the certificate over to the defendant Carolina Eastern Chemical Company, Inc., so that the defendant may apply such funds to the indebtedness of G.H. McCutchen.