**In re Gary Vernon ENDICOTT and Judy Mae Endicott, Debtors.**

**Bankruptcy No. 99–30499M.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Sept. 21, 1999.

Warren E. Dupwe, Jonesboro, AR, for debtors.

Jay Scholtens, Jonesboro, AR, for Mid-South Bank.

James C. Luker, Wynne, AR, trustee.

*ORDER*

JAMES G. MIXON, Chief Judge.

On April 12, 1999, Gary Vernon Endicott ("Debtor") and Judy Mae Endicott filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. James E. Luker was appointed the chapter 7 trustee.

On June 23, 1999, MidSouth Bank ("Bank") filed a motion for relief from the automatic stay to foreclose a security interest in proceeds of the United States Department of Agriculture's Crop Loss Disaster Assistance Program (CLDAP) in the sum of $10,089.00.[1] In response to the motion, the Trustee alleged that the Bank's security interest was not perfected because the right to receive the payments had not been specifically assigned to the Bank. The Debtor also objected to the motion for relief on the same grounds.[2] Trial was conducted in Jonesboro, Arkansas, on August 2, 1999, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), and the Court has jurisdiction to enter a final judgment in this case.

The facts are not in dispute. On December 31, 1997, the Debtor, for a valuable consideration, executed a combination promissory note and security agreement in favor of the Bank in the sum of $120,-000.00. The Debtor granted to the Bank a security interest in several items of collateral including:

Government Payments and Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of

---

1. The amount of the payment at issue was never introduced into the record, but the parties appeared to be in agreement that the sum was $10,089.00, as evidenced by counsels' opening statements and closing arguments.

2. The Debtor has not claimed the payments as exempt property but indicated in his pleading a desire to amend the schedule of exemptions to include them.

any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

(Pl.'s Ex. 1.)

A financing statement was executed granting the Bank a security interest in the same collateral and it was properly filed with the Office of the Circuit Clerk of Mississippi County, Chickasawba District on January 7, 1998. The Debtor applied for a CLDAP benefit in February 1999 for his 1998 crop loss. The Debtor filed his bankruptcy petition in April 1999, and the CLDAP payment in the sum of $10,089.00 was deposited to the Debtor's account at the Bank in June 1999. The Bank froze the account and commenced this action for relief from the automatic stay. The Debtor never executed an assignment to the Bank of his entitlement to CLDAP payments as permitted by federal regulation. *See* 7 C.F.R. §§ 1404.3 & 1437.18 (1999).

The Trustee and the Debtor argue that the Bank's security interest is unperfected solely on the grounds that the Bank failed to obtain an assignment as permitted by applicable government regulations. They cite no authority for the argument except a portion of the language of the regulation which states that "any payment or portion thereof to any person shall be made ... without regard to any claim as lien against the crop or proceeds thereof, in favor of ... any other creditor...." 7 C.F.R. § 1437.18 (1999).

■ The filing requirements of the Arkansas version of the Uniform Commercial Code are applicable to all secured transactions unless superseded by some other state or federal filing scheme. Ark. Code Ann. § 4–9–302(3)(a) & (4) (Michie Supp.1997). However, the purpose of a regulation such as the one stated above is not to create an alternate federal filing scheme; such a regulation is designed to protect the government from liability if the program payments are made to some unauthorized person. *J. Catton Farms, Inc.*

*v. First Nat'l Bank,* 779 F.2d 1242, 1245 (7th Cir.1985) (holding that a federal regulation regarding assignment of in-kind payments did not set up a federal filing scheme); *In re Sunberg,* 729 F.2d 561, 562 (8th Cir.1984) (ruling that federal regulation of assignments of in-kind payments insulated the government from conflicting claims over payments but did not preempt state commercial law); *First State Bank v. Holder (In re Nivens),* 22 B.R. 287, 291 (Bankr.N.D.Tex.1982) (concluding that creditors' perfected security interests created liens in disaster relief payments that were not defeated by failure of creditors to execute and file assignment forms authorized by federal regulation).

Under Arkansas law a creditor may acquire a security interest in personal property when certain requirements are met. The debtor must sign a security agreement in favor of the secured party and that agreement must contain a description of the collateral, value must be given between the debtor and the secured party, and the debtor must have rights in the collateral. Ark.Code Ann. § 4–9–203(1)(a)–(c) (Michie Supp.1997); *Rice v. Fas Fax Corp. (In re Hot Shots Burgers & Fries, Inc.),* 169 B.R. 920, 925 (Bankr. E.D.Ark.1994); *Bank of Yellville v. Scott (In re Scott),* 113 B.R. 516, 519 (Bankr. W.D.Ark.1990).

■ Here, the program benefit was for the 1998 crop that failed, and the Debtor testified that his right to the payment accrued when he applied for it in late February or early April of 1999. The Debtor executed a security agreement which contains an adequate description of the collateral and value was given between the Debtor and the Bank. The lien was properly perfected by filing with the Clerk of the Circuit Court in the county where the Debtor resided. Ark.Code Ann. § 4–9–401(1)(a) (Michie 1991). Thus, the Bank holds a perfected security interest in the program benefits.

It is not uncommon for debtors to grant security interests in benefits from government farm programs. *See, e.g., Kingsley v. First Am. Bank (In re Kingsley),* 865 F.2d 975 (8th Cir.1989) (creditor could have obtained security agreement specifically covering government diversion payments); *In re Waters,* 90 B.R. 946 (Bankr. N.D.Iowa 1988) (creditor held security interest in government subsidy payments of all kinds); *In re Sunberg,* 35 B.R. 777 (Bankr.S.D.Iowa 1983) (creditor held security interest in in-kind payments to debtor), *aff'd,* 729 F.2d 561 (8th Cir.1984).

The Bank's claim is approximately $56,000.00 and its collateral consists of program benefits totaling $10,089.00; therefore, no equity exists for the benefit of unsecured creditors. Thus, pursuant to 11 U.S.C. § 362(d)(2), the motion for relief from stay is granted, and the Bank will be permitted to liquidate its security *In re Waters,* 90 B.R. 946 (Bankr.N.D.Iowa 1988) (creditor held security interest in government subsidy payments of all kinds), interest in the proceeds of the crop disaster payment.

IT IS SO ORDERED.