**AG ACCEPTANCE CORPORATION, as assignee of Ag Services of America, Inc., Plaintiff,**

v.

**Lowell F. NELSON and Sandra J. Nelson, Defendants.**

Civ.No. 99–1026 (DFW/RL).

United States District Court, D. Minnesota.

March 17, 2000.

Jon Richard Brakke, Vogel Weir Hunke & McCormick, Fargo, ND, for plaintiff.

Robert Lorne Russell, Arverson Lundeen & Hoff, Fergus Falls, MN, for defendants.

FRANK, District Judge.

After review and absent objection, the recommended ruling is hereby affirmed.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

### I.  *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Plaintiff's Motion to Remand this action to the District Court for the County of Clay, Minnesota, where the action was originally commenced.  A Hearing on the Motion was conducted on January 12, 2000, at which time the Plaintiff appeared by Jon R. Brakke, Esq., and the Defendant appeared by Robert L. Russell, Esq.  For reasons which follow, we recommend that the Motion to Remand be granted.[1]

### II.  *Discussion*

The facts are not seriously in dispute.  For the crop year of 1997, the Plaintiff extended a loan to the Defendants, in the principal sum of $300,000.00, which was memorialized in a Master Promissory Note of May 6, 1997, and in a Supplement Master Promissory Note, which increased the original principal balance to $340,000.00.  In order to collateralize the Plaintiff's debt, the Plaintiff took a security interest in the Defendants' crops, and in all agricultural program payments, from the Federal Government, to which the Defendants might be entitled.  In the pertinent Promissory Notes, the Defendants agreed that they would "immediately execute, deliver and assign to [the Plaintiff] all documents under applicable state and federal laws, rules and regulations necessary to perfect, assign, and complete [the Plaintiff's] interest in any entitlement or payments (whether in cash or in kind) arising under Government agricultural subsidy, deficiency, diversion, disaster, conservation or similar programs."

Although the Master Promissory Note required that the Defendants pay all principal amounts, and accrued interest, by January 15, 1998, they failed to satisfy their obligations to the Plaintiff and, currently, a debt in excess of $240,000.00 remains unpaid.  In an effort to recover on the debt owed, the Plaintiff requested the Defendants to assign to the Plaintiff their crop loss disaster assistance payments.  The Defendants refused to execute the documents that would allow a direct pay-

---

1.  Within this District, and within this Circuit, Motions to Remand a State Court proceeding, whose removal to Federal Court has been effected, are recognized as nondispositive Motions, which are within the referral jurisdiction of this Court, as provided by Title 28 U.S.C. § 636(b)(1)(A).  See *Dyrda v. Wal–Mart Stores, Inc.*, 41 F.Supp.2d 943, 945 (D.Minn.1999); *Regents of the Univ. of Minnesota v. Glaxo Wellcome, Inc.*, 44 F.Supp.2d 998, 1001 (D.Minn.1999); *Blair v. Source One* *Mortg. Services Corp.*, 925 F.Supp. 617, 619 n. 1 (D.Minn.1996); *Banbury v. Omnitrition Intern., Inc.*, 818 F.Supp. 276, 279 (D.Minn. 1993); *White v. State Farm Mutual Insurance Company*, 153 F.R.D. 639, 642 (D.Neb.1993).  Here the matter was referred to us by the District Court, the Honorable Donovan W. Frank presiding, for a recommended disposition, and we adhere to the constraints of that referral.  See, *Banovetz v. King*, 66 F.Supp.2d 1076, 1078 n. 1 (D.Minn.1999).

ment of the disaster assistance payments to the Plaintiff and, fearing that the Defendants might expend those funds upon their receipt, the Plaintiff filed an action for injunctive relief in the State District Court for the County of Clay, Minnesota. In due course, the District Court issued a Temporary Restraining Order ("TRO") which provided, in part, as follows:

> [P]ending further order of this Court, any agricultural disaster program payments to which the Defendants are entitled shall not be assigned to any other entity nor with respect to any Disaster Program Payments which Defendants receive, shall Defendants cash any check for representing said payments or spend, dissipate, or otherwise dispose of said payments. In all respects, Defendants shall retain all Disaster Program Payments as to which Plaintiff claims a security interest.

The State Court scheduled a Hearing, so as to determine whether the TRO should continue as a Temporary Injunction, for June 21, 1999, but, before the Court issued its ruling, the Defendants removed this action, on July 2, 1999, to this Court.

The Plaintiff now seeks to remand this matter to the State District Court, arguing that this Court is without the requisite subject matter jurisdiction to consider the parties' claims.

### III. *Discussion*

In their Notice of Removal, the Defendants asserted that removal was permissible because the action presented a Federal Question, and because of complete diversity between the parties. The Plaintiff notes, however, and the Defendants do not disagree, that "they cannot base removal of this action to federal court on diversity of citizenship, since the defendants are both citizens of the state in which the action is brought." [2] *Defendants' Brief in Opposition to Motion for Remand,* at 2;

see also, *Title 28 U.S.C. § 1441(b).* Accordingly, our analysis turns to whether the parties' claims present a Federal Question.

In removing the action from State Court, and in opposing the Plaintiff's Motion to Remand, the Defendants rely exclusively on that portion of the Regulations, which govern the administration of the Federal Crop Loss Disaster Assistance Program, and which provide, in pertinent part, as follows:

> (j) Any payment or portion thereof to any person shall be made without regard to questions of title under States law and without regard to any claim or lien against the crop, or proceeds thereof.
>
> (k) Disaster benefits under this part will be made without taking any applicable offsets. The regulations governing offsets found at part 792 of this title and 1403 of this chapter shall not apply to payments made under this part.
>
> (*l*) Payments which are earned under this part may be assigned in accordance with the provisions of part 1404 of this chapter upon filling out the applicable assignment form.

*7 C.F.R. § 1477.109(j), (k) and (l).*

Given the language of these provisions, the Defendants urge that, whether the Plaintiff can prioritize its security interest, as recognized under State law, over the Regulation's assurance that the crop disaster payments are unaffected by State laws which allow the assertion of claims, or liens, on other instruments of value, presents a Federal Question. As phrased by the Defendants:

> The critical issue is whether the federal act and regulations preempts the plaintiff's claim and that rests squarely on the construction and interpretation of The Agriculture Rural Development

---

**2.** Given the parties' agreement, that diversity of citizenship does not here allow a removal of this action to Federal Court, we need not reach the question of the jurisdictional amount in dispute, although we note that the amount of the crop disaster proceeds, which are the subject of this action, do not exceed the $75,000 threshold established by Title 28 U.S.C. § 1332(a).

Food and Drug Administration and Related Agencies Appropriation Act of 1999 and the regulations thereunder.

*Defendants' Brief in Opposition to Remand,* at p. 5.

The Plaintiff disagrees, and argues that the referenced Regulations "are solely for the administrative convenience of the government and provide a mechanism whereby a producer eligible for disaster payments can have the same remitted directly to a creditor by filling our a CCC–36 assignment form." *Plaintiff's Brief in Support of Motion for Remand,* at p. 3.

The Plaintiff maintains that the question presented here "is whether said disaster program payments are subject to the security interest of the Plaintiff" and, since "Minnesota Statutes § 336.9–201 sets forth the requirements for a security agreement," the "resolution of the Plaintiff's claims does not turn on a right arising under the Constitution, treaties or laws of the United States," and "jurisdiction for purposes of removal may not be based on the existence of a federal question." *Id.* at 4–5. According to the Plaintiff, the same argument, that the Defendants raise here, was rejected by our Court of Appeals in *In re Sunberg,* 729 F.2d 561, 563 (8th Cir. 1984). In *Sunberg,* the Court confronted an issue involving the Federal Payment–In–Kind ("PIK") subsidy program, and the effort, on the part of the recipients of those benefits, to exclude those proceeds from the security interests of a creditor.

There, the pertinent Federal Regulations closely parroted the language we here confront. Specifically, the Regulations stated as follows:

> (e) Assignments with respect to quantities of a commodity which can be received by a producer as payment in kind will be recognized by the Department [of Agriculture] only if such assignment is made on Form CCC–479, Assignment of Payment–In–Kind, executed by the assignor and assignee, and filed with the county committee.
>
> (f) Except as provided in paragraph (e) of this section, any payment in kind or

portion thereof which is due any person shall be made without regard to questions of title under State law, and without regard to any claim of lien against the commodity, or proceeds thereof, which may be asserted by any creditor.

*Id.* at 563, quoting *48 Fed.Reg. 9235 (1983)* [then to be codified at 7 C.F.R. § 770.6(e)–(f)].

As here, the debtors in *Sunberg* argued that these provisions evinced an administrative intent to exempt PIK benefits from liens imposed by State law. The Court soundly rejected that argument as follows:

> These provisions merely govern the rights of parties claiming PIK benefits directly from the federal government. They do not prevent one who is entitled to the benefits from pledging the benefits as security on loans properly made under state law. Simply because the government will refuse to deliver the benefits to an assignee not appearing on the proper federal forms does not mean that an assignor can totally disregard legal obligations to the assignee. Such "anti-assignment" provisions are intended to insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties. See Segal v. Rochelle, 382 U.S. 375, 384, 86 S.Ct. 511, 517, 15 L.Ed.2d 428 (1966); In re Nivens, supra, 22 B.R. [287] at 291 [ (N.D.Bkrtcy.Tex.1982) ]. Neither do we read anything in other PIK regulations to restrict program beneficiaries from voluntarily encumbering their PIK benefits.

*Id.*

The Defendants draw nothing to the Court's attention, here, which would counsel a different result, from that obtained in *Sunberg.*

While the Defendant's point to *In re Bechtold,* 54 B.R. 318 (Bktcy.D.Minn.1985), and *Grunzke v. Security State Bank of Wells,* 68 B.R. 446 (D.Minn.1987), these decisions relate to different issues than did either *Sunberg,* or the instant action. In-

deed, in *Bechtold*, the Court tooks pain to demonstrate that the Court's reasoning, in *Sunberg*—upon which we rely—was inapposite because of restrictive regulatory language that is here not in issue.[3] In *Grunzke*, the Court did not so much as cite *Sunberg* and, indeed, a subsequent Bankruptcy Court decision, within this District, distinguished *Grunzke* and went on to expressly observe:

> The [anti-assignment] language of the dairy termination program document and the PIK program document at paragraph 14B simply indicates that the federal government will not be responsible for determining ownership of PIK benefits or dairy termination program benefits. As stated in *In re Sunberg* at 729 F.2d [at] 563 "such 'anti-assignment' provisions are intended to insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial laws between third parties."

*In re Collins*, 68 F.R. 242, 244 (Bkcty.D.Minn.1986).

The recognition, that anti-assignment clauses were not intended to preempt State creditor remedies law, is not of recent origin. In *Martin v. National Surety Co.*, 300 U.S. 588, 594, 57 S.Ct. 531, 81 L.Ed. 822 (1937), the Supreme Court expressed the intention of such clauses as follows:

> The provision of the statute making void an assignment or power of attorney by a Government contractor are for the protection of the Government. * * * In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with de-

lay and embarrassment and the chance of multiple liability. * * * But as applied to the fund in controversy, the peril is now past. The fund is in court to be distributed to rival claimants, with the Government discharged irrespective of the outcome.

[Citations omitted].

The very same may be said here, as the anti-assignment provision, which is at issue here, has freed the Government from continued exposure to the conflicting claims of the parties as to their respective entitlements to the proceeds in dispute. See also, *United States v. Crain*, 151 F.2d 606, 608 (8th Cir.1945) ("The purpose of this statute [i.e., Title 31 U.S.C. § 203] is to protect the government and prevent it from becoming embroiled in conflicting claims or subjected to multiple liability.").

While not cited by the parties, we find the most analogous decision, to the preemptive issue we here face, in *In re Endicott*, 239 B.R. 529 (Bktcy.E.D.Ark.1999), where the Court considered whether the rights of a creditor, which were perfected under State law, had been vitiated by the predecessor Regulation to the one at play here. In *Endicott*, a creditor had obtained a security interest in proceeds from the Crop Loss Disaster Assistance Program, and sought to liquidate that security interest notwithstanding the automatic stay imposed by the debtor's petition in bankruptcy. The debtor, and the Trustee in Bankruptcy, argued that the creditor's security interest was unperfected because the creditor had failed to obtain an assignment of the Crop Loss funds as permitted by 7 C.F.R. § 1437.18 (1999).[4] Interpreting language

---

**3.** Notably, the Court, in *Bechtold v. Miller*, 54 B.R. 318 (Bktcy.D.Minn.1985), decided the merits of the claimed security interest on the basis of Minnesota law, and ended its decision by opining that, under Federal law, the security interest would fare no better. As to the Federal law, the Court noted that the regulatory language, there at issue, restricted assignments except as "security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice, for the cur-

rent crop year," and expressly provided that "[n]o assignment may be made to secure or pay any preexisting indebtedness of any nature whatsoever." *Id.* at 321. Of course, no such language is at issue here.

**4.** Section 1437.18 provided as follows:

(a) Except as provided in paragraph (b), any payment or portion thereof to any person shall be made without regard to questions of title under State law and without regard to any claim or lien against the crop,

that is substantively identical to that contained in 7 C.F.R. § 1477.109(j), (k) and (*l*), the Court observed:

> However, the purpose of a regulation such as the one stated above is not to create an alternative federal filing scheme; such a regulation is designed to protect the government from liability if the program payments are made to some unauthorized person. J. Catton Farms, Inc. v. First Nat'l Bank, 779 F.2d 1242, 1245 (7th Cir.1985) (holding that federal regulation of assignments of in-kind payments insulated the government from conflicting claims over payments but did not preempt state commercial law); First State Bank v. Holder (In re Nivens), 22 B.R. 287, 291 (Bank.N.D.Tex.1982) (concluding that creditors' perfected security interests created liens in disaster relief payments that were not defeated by failure of creditors to execute and file assignment forms authorized by federal regulation).

Accordingly, since the creditor had perfected its security interest under the applicable State law, the Court rejected the contention—identical to that advanced by the Defendant here—that it was still necessary for the creditor to comply with the anti-assignment provisions of the pertinent Federal Regulation.

In the absence of the power to assign such government benefits under State law, those receiving such benefits could be detrimentally effected. As the Court explained, in *In re Arithson*, 175 B.R. 313, 321 (Bkrtcy.D.N.D.1994):

> To allow a trustee or debtor-in-possession to use the anti-assignment provision of the federal regulations to avoid a security interest that is properly perfected under state law would undoubtedly restrict the availability of funds often crucial to the success of a farming operation. Such an interpretation would have a fundamental impact on the ability of debtors who participate in federal farm programs to finance a farm operation or restructure their obligations. Government entitlements, such as [Conservation Reserve Program] payments may, in many cases, be the only unencumbered asset a farmer may have available to pledge as security. The court declines to override intricate state law of general applicability to secured transactions on which both debtors and creditors base their daily commercial transactions.

Given the wealth of authority, which is closely on point, we reject the Defendant's argument that 7 C.F.R. § 1477.109(j), (k), and (*l*), preempts the Plaintiff's security interest and, finding no Federal question presented by the issues contained in the Plaintiff's State Court Complaint, we recommend that this matter be remanded to the District Court for the County of Clay, Minnesota.[5]

NOW, THEREFORE, It is—

RECOMMENDED:

That the Plaintiff's Motion to Remand [Docket No. 9] be granted.

---

or proceeds thereof, in favor of the owner or any other creditor except agencies of the U.S. Government. The regulations governing offsets and withholdings found at part 1403 of this chapter shall be applicable to payments under this part.
(b) Any producer entitled to any payment may assign any payments in accordance with regulations governing assignment of payment found at part 1404 of this chapter.

**5.** Obviously, we express no opinion on the parties' respective rights, to the proceeds in contest, under the laws of the State of Minnesota.